**George COEN, Plaintiff–Appellant,**

v.

**William RUNNER, Superintendent of Brand Inspectors for Fremont County, Wyoming; Dean Prosser, Chief Brand Inspector for the State of Wyoming; the Wyoming Stockgrower's Association, a non-profit Wyoming corporation; William Lassiter, Deputy Sheriff of Fremont County, Wyoming; Tim McKinney, Sheriff of Fremont County, Wyoming; and the Fremont County Sheriff's Department, Defendants–Appellees.**

**No. 86–1708.**

United States Court of Appeals,
Tenth Circuit.

Aug. 16, 1988.

Charles E. Hamilton, of Hamilton Law Associates, P.C., of Riverton, Wyo., for plaintiff-appellant.

James L. Applegate (Glenn Parker and John J. Metzke, of Hirst & Applegate, of Cheyenne, Wyo., with him on the brief), of Hirst & Applegate, of Cheyenne, Wyo., for defendants-appellees William Runner, Dean Prosser, and the Wyoming Stock Growers Ass'n.

Elizabeth Z. Smith, of Freudenthal, Salzburg, Bonds & Rideout, P.C., of Cheyenne, Wyo., for defendants-appellees William Lassiter, Tim McKinney, and the Fremont County Sheriff's Dept.

Before HOLLOWAY, Chief Judge, and McWILLIAMS, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

George Coen appeals from the district court's order granting summary judgment for defendants on qualified immunity grounds. We affirm.

## I.

These facts were undisputed at the time of the district court's summary judgment order. In 1983 William Runner, a cattle brand inspector in Fremont County, Wyoming, and William Lassiter, a deputy sheriff for the county, were investigating a series of cattle rustling incidents. During that investigation, one of the suspects implicated Coen. Runner and Lassiter expanded their investigation to determine whether Coen was involved in the rustling. In August 1983 Coen called Runner and asked that Runner go to Coen's house the next day to inspect some horses. Runner agreed to go, and when he arrived, he saw that another inspector, Boyd Whitman, was already there. After Coen complained to the two inspectors about the treatment he was receiving from inspectors, he threatened to kill both Runner and Whitman.

When the inspectors left Coen's home, they decided to contact Lassiter about Coen's threat to kill them. After discussing the incident with Lassiter, they passed the information on to William Eichelberger, who was a deputy county attorney. Eichelberger advised Runner and Lassiter to submit affidavits concerning the incident and to file a criminal complaint. Based upon the affidavits submitted by Runner and Lassiter, Judge Donald Hall issued a criminal warrant charging Coen with violation of section 6–5–305(a) of the Wyoming statutes. Under the statute, it is a felony to "influence, intimidate or impede a juror, witness or officer in the discharge of his duty."

Coen was arrested, and Fremont County Sheriff Tim McKinney issued a press release that contained information regarding Coen's arrest. The charges against him were dismissed when Judge Hall concluded that the statute under which Coen was charged referred to only those "officers" performing court-related duties. Coen then instituted this lawsuit in which he alleged that Runner and Lassiter acted under color of state law to abridge his first and fourth amendment rights in violation of 42 U.S.C. § 1983; he also seeks damages for malicious prosecution and abuse of process. Coen also asserted claims against McKinney and Dean Prosser, the Chief brand inspector for the state of Wyoming, for their alleged failure to properly train and supervise their subordinates. In addition, he pursued claims against the Wyoming Stockgrowers Association and the Fremont County Sheriff's Department, which are apparently based on a respondeat superior theory. Finally, Coen alleged that by issuing the press release describing Coen's arrest, McKinney acted under color of state law to deprive him of rights secured by the fifth amendment in violation of section 1983.

After some discovery, the defendants submitted motions for summary judgment. The district court granted the summary judgment motions on all counts. Two of the section 1983 claims were based on the first and fourth amendments. On those claims the court granted judgment for Runner and Lassiter on qualified immunity grounds. The court also held that those same defendants were entitled to summary judgment on Coen's malicious prosecution claim, either because they were shielded by qualified immunity or because Coen had failed to state a claim for malicious prosecution under Wyoming law. Regarding Coen's abuse of process claim against Runner and Lassiter, the court determined that Coen had failed to state a cause of action. Next, the court held that the claims against McKinney and Prosser for failure to properly train and supervise Runner and Lassiter were state claims upon which no basis for independent federal jurisdiction was stated. Similarly, the court held that the claims against the Wyoming Stockgrowers Association and the Fremont County Sheriff's Department were pendant state claims for which no independent federal jurisdiction existed. Because summary judgment was granted regarding the federal section 1983 claims, the court exercised its discre-

tion and dismissed these pendant state claims. Coen appeals the district court's summary judgment order. We affirm the order granting summary judgment in favor of all of the defendants.

## II.

■■■■ We first address Coen's objection to the district court's disposition of the qualified immunity claims asserted by Runner and Lassiter. Qualified immunity is an affirmative defense that protects government officials from personal liability unless their actions violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Once the defense has been raised and the plaintiffs have met their burden of identifying both the clearly established law that the government official is alleged to have violated and the conduct that violated that law, the defendant must demonstrate that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time. *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988). A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity. *DeVargas v. Mason & Hanger-Silas Co.*, 844 F.2d 714, 719 (10th Cir.1988) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)).

Coen's contention that Runner and Lassiter acted under color of state law to abridge his clearly established constitutional rights is threefold. First, he alleges that they violated his fourth amendment rights by procuring a warrant for his arrest without probable cause. Second, he contends that the decision to procure the arrest warrant was motivated by a desire to retaliate for Coen's exercise of his first amendment free speech rights. Third, he claims that Runner and Lassiter are liable for malicious prosecution which denied him of his

fourteenth amendment due process rights. Lassiter and Runner contend that qualified immunity shields them from liability for each of these claims, and, like the district court, we agree.

In *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court examined the availability of qualified immunity to law enforcement officials sued because of their decision to seek an arrest warrant. The Court said that even though officers may not rely on a judicial officer's probable cause determination to shield them from liability when that determination is erroneous, the officers who requested the warrant cannot be held liable if the magistrate's mistaken determination is within the range of professional competence. *Id.* at 345, 106 S.Ct. at 1098. Only where the law enforcement officer's warrant application is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable" will that officer lose the shield of immunity. *Id.* at 344–45, 106 S.Ct. at 1098. *Malley* appears squarely applicable to the circumstances surrounding the fourth amendment issues presented in this case.

We hold that Runner and Lassiter are entitled to qualified immunity. They are state officials who received death threats from Coen when they went to his home at his request. On its face, the Wyoming statute under which Coen was charged appears to prohibit the making of such threats. Lassiter and Coen presented affidavits to the assistant county attorney relating the events that occurred on the Coen property, and Judge Hall ultimately issued an arrest warrant for Coen.

In the district court Coen did not contest the underlying facts that led to the issuance of the arrest warrant. He contends, however, that because Judge Hall subsequently determined that the statute under which Coen was charged could not be interpreted broadly enough to prohibit the conduct in which he engaged, Runner and Lassiter had no probable cause to seek a warrant for violation of that statute.

While Coen may be correct in asserting that there was no probable cause to charge

him with violating section 6–5–305(a) now that statute has been construed to apply only to judicial officers, it does not necessarily follow that the defendants are not entitled to qualified immunity. These officers' decision to seek a warrant was objectively reasonable if their warrant applications were not totally lacking in indicia of probable cause under the law as it existed at the time. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The affidavits that Runner and Lassiter presented were not so lacking. Thus, Runner and Lassiter cannot be held liable.

■ Coen also contends that Runner and Lassiter violated his first amendment rights by seeking a warrant in retaliation for critical statements he had made regarding the cattle rustling investigation the two defendants were pursuing.

In *Pueblo Neighborhood,* we recognized that when intent or motive is an element of the plaintiff's constitutional claim against governmental officials, the wholly objective approach suggested by *Harlow* is inappropriate. 847 F.2d at 648. However, in that case we established that once a defendant has made a showing of objective reasonableness, a plaintiff can avoid summary judgment only by coming forward with specific factual allegations supporting his or her contention that the defendants' actions were guided by impermissible motives. *Id.* at 649.

As we pointed out in our discussion of Coen's fourth amendment claim, these defendants have demonstrated that their decision to seek a warrant for Coen's arrest was objectively reasonable. Coen contends that notwithstanding their apparent reasonableness, the defendants were motivated by a desire to infringe upon his exercise of free speech. However, he puts forward nothing in opposition to defendants' summary judgment motion that satisfies the standard we established in *Pueblo Neighborhood.* Thus, Runner and Lassiter are also entitled to summary judgment on Coen's first amendment claim.

■ Coen also claims that Runner and Lassiter, acting under color of state law, maliciously prosecuted him and thereby denied him of his fourteenth amendment due process rights in violation of section 1983. The defendants contend that qualified immunity also shields them from liability for this claim. We agree. Because the defendants are protected by qualified immunity on this claim, we need not address Coen's contention that the district court erred by holding that the elements of a malicious prosecution action under Wyoming law must be met to establish a violation of section 1983.

■ Coen has also attempted to state a section 1983 claim against McKinney by alleging that in issuing the press release that described Coen's arrest, McKinney acted under color of state law to abrogate Coen's fifth amendment property rights. Coen alleges that his alleged reputational damages amounted to a fifth amendment deprivation. In essence, his claim is one for libel, a claim usually redressable under state law and not section 1983. Unlike other rights guaranteed by the federal constitution, however, the scope of fifth amendment property rights is determined by reference to *state* law. Thus, if Wyoming law creates a property interest in being free from libel, Coen will have stated a violation of his fifth amendment rights for which section 1983 properly provides a remedial mechanism. The district court concluded that Wyoming law provides no such property interest, and we agree.

Coen contends that article 1, section 20 of the Wyoming Constitution establishes a right to be free from libel. The section states that:

> Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right; and in all trials for libel, both civil and criminal, the truth, when published with good intent and [for] justifiable ends, shall be a sufficient defense, the jury having the right to determine the facts and the law, under the direction of the court.

This provision provides only that the right to free speech and press shall be subject to a potential cause of action for libel. We agree with the district court that the consti-

tutional provision, as well as the state statutes cited by Coen, at most establish that he has a right to bring a cause of action for libel if he so desires; they create no property interest in being free from libel. Thus, having failed to identify a constitutionally protected right, Coen has failed to properly state a section 1983 claim against McKinney.

Coen's remaining claims against McKinney, Prosser, and their respective organizations are state law claims. Because we affirm the district court's grant of summary judgment as to the federal claims, we decline to exercise jurisdiction over these state based claims, and they are dismissed.

We affirm the district court's order granting summary judgment for Lassiter and Runner on the section 1983 claims and dismiss the pendant state claims.