**Dacre Beth DRAPER, Plaintiff,**

v.

**John WALSH, individually and as Sheriff of Cleveland County, State of Oklahoma; and the Board of County Commissioners of the County of Cleveland, State of Oklahoma, Defendants.**

No. CIV–91–1104–C.

United States District Court,
W.D. Oklahoma.

Dec. 17, 1991.

Norman P. McDonald, Oklahoma City, Okl., for plaintiff.

Reginald D. Gaston, Jamie J. McGraw, Dist. Attorney's Office, Norman, Okl., John M. Jacobsen, Dist. Attorney's Office, Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION AND ORDER

CAUTHRON, District Judge.

### I. INTRODUCTION

At issue is defendant John Walsh's motion for summary judgment filed November 19, 1991. Plaintiff Dacre Beth Draper responded on November 27, 1991. This case involves allegations of an illegal strip search of plaintiff following her arrest for public intoxication and subsequent detention at the Cleveland County Detention Center. This case is set on this Court's March 1992 trial docket.

### II. STANDARD FOR SUMMARY JUDGMENT

The facts presented to the court upon a motion for summary judgment must be construed in a light most favorable to the nonmoving party. *Board of Educ. v. Pico*, 457 U.S. 853, 864, 102 S.Ct. 2799, 2806–07, 73 L.Ed.2d 435 (1982); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. Only genuine disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Finally, the movant must show entitlement to judgment as a matter of law. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985); Fed.R.Civ.P. 56(c).

Although the Court must view the facts and inferences drawn from the record in a light most favorable to the nonmoving party, "even under this standard there are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chem. Co.*, 849 F.2d 1269, 1273 (10th Cir.1988). As stated by the Supreme Court, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

The Supreme Court articulated the standard to be used in summary judgment cases, emphasizing the "requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510 (emphasis in original). A dispute is "genuine" "if a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The Court stated that the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. "The mere existence of a scintilla of

evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252, 106 S.Ct. at 2512.

### III. UNDISPUTED FACTS

Rule 14(B) of the Western District of Oklahoma provides a framework for determining undisputed facts at the summary judgment stage. The Rule provides:

> The brief in support of a motion for summary judgment (or partial summary judgment) shall begin with a section that contains a concise statement of material facts as to which movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies. The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

W.D.Okla.R. 14(B).

A review of Walsh's brief and Draper's response reveals that the following facts are undisputed within the meaning of Rule 14(B) for the purposes of this motion only:

1. Probable cause existed to arrest Dacre Beth Draper on or about February 23, 1990, on the charge of public intoxication while she was an occupant in a vehicle being operated in the county of Cleveland County, State of Oklahoma.

2. Draper is not contesting the fact that there was probable cause for her arrest on or about February 23, 1990.

3. Subsequent to Draper's arrest, she was brought to the Cleveland County Detention Center in Cleveland County, State of Oklahoma, at approximately 1:30 a.m., February 23, 1990.

4. Draper was unable to post bond in her own behalf when she was brought to the Cleveland County Detention Center.

5. Draper was given the opportunity while at the Cleveland County Detention Center to place two phone calls. One call was completed. Records indicate that the call was placed approximately 8:17 a.m. on February 23, 1990. Records also indicate that Draper refused to place a second call, although given the opportunity.

6. When an arrestee is placed in the Cleveland County Detention Center, precautions are taken to insure the safety of the arrestee, along with jail personnel and other detainees in the Center. The precaution may involve strip searching the arrestee in order to maintain the security of the Center and insure the safety of all persons confined in the facility and the jail personnel.

7. The procedure for strip searching arrestees who are brought into the Cleveland County Detention Center and cannot post immediate bond for a bondable offense entails having only female jail personnel conduct strip searches of female arrestees, in an area segregated from view of all other arrestees, with no touching of the arrested person by jail personnel.

8. The strip search policy of the Cleveland County Detention Center is designed to maintain security in the facility and is conducted in a manner involving the least amount of personal intrusion, in a segregated place involving just the person being searched and jail personnel of the same gender.

9. Because of the relatively long period of detainment of Draper in the Center, such being approximately seven and a half hours, it became necessary to process her into the facility, classify her, and begin the procedure to move her upstairs to an area intermingling pretrial detainees and convicted persons.

10. Prior to moving an individual from the booking area to the upstairs holding

cells, strip searches are conducted in order to maintain security of the facility and insure the safety of jail personnel, the person being moved upstairs, and other detainees.

11. At all times connected with this lawsuit, Sheriff John Walsh was functioning in his official capacity as Sheriff of Cleveland County, State of Oklahoma.

12. At no time did Walsh personally participate in the actual arrest, booking, search, or detainment of Draper.

13. At no time did Walsh act with ill will, malice, or a desire to injure plaintiff's constitutional rights.

14. Kenneth Zane, Cleveland County Detention Center Jail Administrator, has attested that during his employment at the Center, various items of contraband have been brought into the Center by arrestees and found during security checks.

15. Records kept by the Cleveland County Detention Center in the normal course of business operation indicate and detail that contraband has been concealed and carried into the Center by arrestees and in many occasions, contraband is found on the persons or inside the Center.

Walsh's brief at 1–3 (Nov. 19, 1991); Draper's response brief at 1–2 (unnumbered) (Nov. 27, 1991).

## IV. ANALYSIS

Walsh moves for summary judgment based on a qualified immunity defense. *See Snell v. Tunnell*, 920 F.2d 673, 696–97 (10th Cir.1990) (discussing qualified immunity defense), *cert. denied sub nom.*, —— U.S. ——, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991); *Coen v. Runner*, 854 F.2d 374, 377 (10th Cir.1988) (discussing standard for granting summary judgment based on qualified immunity). The Court's task is a fact-specific legal inquiry: "Do the facts alleged by the plaintiff[ ] support a violation of clearly established statutory or constitutional rights of which a reasonable person would have known." *Snell v. Tunnell*, 920 F.2d at 696; *see Meade v. Grubbs*, 841 F.2d 1512, 1533 (10th Cir.1988) (the issue is whether the law was clearly established when the conduct complained of occurred).

The facts in this case were not disputed by Draper pursuant to W.D.Okla.R. 14(B) as noted in the previous section. However, the Court *sua sponte* finds some genuine disputes of material facts as fully developed below. After considering these facts the Court finds that the law was clearly established at the time Draper was strip searched on February 23, 1990, that a reasonable official would know under the circumstances that her search violated her Fourth and Fourteenth Amendment rights. U.S. Const. amends. IV & XIV. The Fourth Amendment only prohibits unreasonable searches; however, with certain exceptions "[w]arrantless searches are *per se* unreasonable under the Fourth Amendment." *United States v. Lopez*, 777 F.2d 543, 550 (10th Cir.1985) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). Walsh must show that his actions were objectively reasonable in light of the law and the information he possessed at the time. *Coen v. Runner*, 854 F.2d at 377.

Seven years ago the Tenth Circuit Court of Appeals found 42 U.S.C. § 1983 liability when a detainee was strip searched after being jailed for an unpaid speeding ticket and violation of a driver's license restriction. *Hill v. Bogans*, 735 F.2d 391, 392–95 (10th Cir.1984); *see generally* Annotation, *Fourth Amendment As Prohibiting Strip Searches Of Arrestees Or Pretrial Detainees*, 78 A.L.R.Fed. 201, 216–19, § 6[b] (1986) & Supp. at 8–9 (1990). The Tenth Circuit found that there were no circumstances in that case that indicated the detainee might possess either a weapon or drugs, and that intermingling with the prison population was only one factor to consider in judging the constitutionality of a strip search. *Hill v. Bogans*, 735 F.2d at 394.

In the present case the Cleveland County Detention Center has instituted a policy of indiscriminate strip searching of all prisoners with total disregard to the constitutional mandates of the Fourth Amendment, which condones only reasonable searches. *See* Walsh's brief at Ex. A, p. 4, ¶ 11 (Nov. 19, 1991) (Cleveland County Sheriff's De-

partment Admissions Procedure, No. 24.01 (Aug. 1, 1982)) (Detention Deputy "[w]ill inspect prisoner and prisoner[']s clothing for contraband while conducting *unclothed body search.*") (emphasis supplied).[1]

▪ At the motion to dismiss stage, prior to the introduction of any evidence, this Court was undecided whether Draper's charge of public intoxication could be included as an offense where strip searching is per se permissible such as those associated with the concealment of weapons or contraband in a body cavity. *See Order Granting Motion To Dismiss And Denying Motion To Strike* at 2 (W.D.Okla. Sept. 4, 1991); *see also Bell v. Wolfish,* 441 U.S. 520, 523–24, 558–59, 99 S.Ct. 1861, 1866, 1884, 60 L.Ed.2d 447 (1979) (finding that visual body cavity searches of correctional inmates did not violate the Fourth Amendment because of serious security dangers and the smuggling of money, drugs, weapons, and other contraband among inmates with more serious offenses than minor traffic offenses who were unable to make bail, awaiting trial for substantial periods, and who were returning from contact visits outside the institution).

However, in *Hill v. Bogans* the Tenth Circuit noted that it agreed with the analysis of the Fourth Circuit in *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981), *cert. denied sub nom.,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). The Tenth Circuit quoted *Logan v. Shealy* for its analysis in holding unconstitutional the practice of strip searching a detainee charged with driving while intoxicated:

"On the undisputed and stipulated evidence, Logan's strip search bore no such discernible relationship to security needs at the Detention Center that, when balanced against the ultimate invasion of personal rights involved, it could reasonably be thought justified. At no time would Logan or similar detainees be intermingled with the general jail population; *her offense, though not a minor traffic offense, was nevertheless one not commonly associated by its very nature with the possession of weapons or contraband;* there was no cause in her specific case to believe that she might possess either; and when strip-searched, she had been at the Detention Center for one and one-half hours without even a pat-down search. *An indiscriminate strip search policy routinely applied to detainees such as Logan along with all other detainees cannot be constitutionally justified simply on the basis of administrative ease in attending to security consideration.*"

*Hill v. Bogans,* 735 F.2d at 394 (emphasis supplied) (quoting *Logan v. Shealy,* 660 F.2d at 1013). The Tenth Circuit embraced the quoted analysis in *Logan v. Shealy,* which found that driving while intoxicated is not an offense that, without more, permits indiscriminate strip searching. Therefore, this Court concludes that public intoxication by alcohol, which is a less serious offense than driving while intoxicated, is likewise an offense not commonly associated by its very nature with the possession of weapons or contraband.[2] *Cf. Lusby v. T.G.*

---

1. The Court notes that in one of Oklahoma's sister states, Colorado, a search like the one conducted on Draper is statutorily prohibited. *See* Colo.Rev.Stat. § 16–3–405(1) ("No person arrested for a traffic or a petty offense shall be strip searched, prior to arraignment, unless there is reasonable belief that the individual is concealing a weapon or a controlled substance or that the individual, upon identification, is a parolee or an offender serving a sentence in any correctional facility in the state or that the individual is arrested for driving while under the influence of drugs."), *quoted in Hill v. Bogans,* 735 F.2d at 393 n. 1.

2. Draper's arrest report indicates that there was a "strong odor of an alcoholic beverage about her person" when she was arrested, and she

otherwise exhibited symptoms of alcohol intoxication such as slurred, loud speech; unsteady balance; and red-glossy eyes, as opposed to any distinguishing signs of drug intoxication, such as, for example, an odor of marijuana or needle marks, or rapid speech. *See* Walsh's brief at Ex. A (Nov. 19, 1991). Draper was cooperative during her arrest and there was no indication of weapons or contraband associated with her arrest. *See id.* Prior to her arrest Draper was a passenger in a car in which the driver was arrested for driving under the influence, and Draper was abandoned following the arrest of the driver. Subsequently, Draper was arrested for public intoxication. *Id.*

As noted by Draper, her offense was merely the violation of Ordinance No. 15–302 of the

*& Y. Stores, Inc.,* 749 F.2d 1423, 1434 (10th Cir.1984) ("A strip search is not improper when a suspect is going to be placed in the general jail population *and* has been charged with a drug offense such as possession of marijuana.") (emphasis supplied), *vacated sub nom. and remanded for reconsideration on other grounds, Lawton v. Lusby,* 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), *reaffirmed on remand,* 796 F.2d 1307, 1313 (10th Cir.), *cert. denied,* 479 U.S. 884, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986).

■ Moreover, while the Fourth Circuit in *Logan v. Shealy* was persuaded in part by the fact that the detainee in that case was not intermingled with the general detention center population that included convicted offenders, the Tenth Circuit in *Hill v. Bogans,* as noted above, did not find that factor to be conclusive as to whether strip searching was permissible, but rather "only one factor to consider in judging the constitutionality of a strip search." *Hill v. Bogans,* 735 F.2d at 394; *see Logan v. Shealy,* 660 F.2d at 1013 (quoted above). It is undisputed in this case that Draper was taken to an area in the Detention Center where detainees are intermingled

with convictees.[3] The Court's task is to balance the need for the particular search against the invasion of personal rights that the search entails. This consideration involves the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Hill v. Bogans,* 735 F.2d at 393–94.

Draper was subjected to a visual strip search, and it is undisputed that it was conducted in a manner involving the least amount of personal intrusion, in a segregated place involving just the person being searched and jail personnel of the same sex and not in the view of any other arrestees, with no touching of the arrested person by jail personnel.[4] The place of the search was proper.

However, with regard to the manner of the search, Walsh contends that the strip search was dignified. This characterization offends the Court's sensibilities. Second only to body cavity searches, strip searches are the most debasing indignities to which American citizens are subjected by the government. In quick passing, a strip search sounds innocuous enough, but on closer scrutiny it involves involuntary

---

City of Norman, Oklahoma, and was not an offense under the laws of the State of Oklahoma. Walsh cites 21 Okla.Stat. § 11(B) to support his argument that Draper might have been confined for up to one day for her offense, but the applicability of that statute is suspect because it only applies to offenses in violation of state laws as opposed to municipal ordinances. In any event it is undisputed that Draper was detained for only seven and a half hours, and the Court concludes that Draper was detained for a petty offense.

3. The Court notes the incongruence of Walsh's position where on one hand he expresses a concern for security due to the intermingling of short-term detainees with long-term convictees that requires indiscriminate strip searching, but on the other hand he has exercised his discretion to practice such a policy in the first instance, which inherently creates the very security problem of which he is concerned. In any event, Walsh has not expressed any institutional requirement that dictates such a suspect intermingling policy. The security of prisoners, staff, and the institution would be greatly enhanced if short-term detainees, such as Draper, who could not post immediate bond for a bondable offense, but were reasonably likely to

shortly make bond, were segregated from inmates who are convicted of crimes. In this regard classification of prisoners is one of the primary, discretionary, security measures that an institution official can make.

4. Draper "contends" in the most general way that her strip search was an affront to human dignity and that she was physically touched by jail personnel during the strip search to which she was subjected. Draper's brief at 2 (Nov. 27, 1991). However, a party resisting a motion for summary judgment must do more than make conclusionary allegations; that party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Dart Indus. v. Plunkett Co.,* 704 F.2d 496, 498 (10th Cir.1983); *see Lake Hefner Open Space Alliance v. Dole,* 871 F.2d 943, 945–46 (10th Cir.1989) (Plaintiff did not "by affidavits or as otherwise ... set forth *specific* facts showing that there is a genuine issue for trial.") (emphasis supplied). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Advisory Committee Note to Fed.R.Civ.P. 56(e)).

exposure and close inspection of the breasts, genitalia, and buttocks, as well as the unwelcome revelation of medical and other highly personal physical secrets to a cold stranger.[5] *See Bell v. Wolfish*, 441 U.S. at 558 n. 39, 99 S.Ct. at 1884 n. 39 ("If the inmate is a male, he must lift his genitals and bend over to spread his buttocks for visual inspection. The vaginal and anal cavities of female inmates also are visually inspected.").

The visual strip search is not as intrusive as the body cavity search where the investigator penetrates the body surface probing for contraband, but is certainly something less than the medical examinations in a clean, sterile environment to which Americans have become accustomed, and where privacy, confidentiality, and personal trust are respected and protected by law and professional licensing ethics. Strip searches can be described by a number of adjectives, but being dignified is not one of their number. *Compare Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir.1986) (body cavity searches are demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, and signify degradation and submission; and perhaps are the greatest personal indignity searching officials can visit upon an individual) *with Cruz v. Finney County, Kan.*, 656 F.Supp. 1001, 1004–06 (D.Kan.1987) (excellent survey of circuit opinions on strip-search law for detainees arrested for traffic violations or minor offenses) ("Strip searches involving the visual inspection of the anal and genital areas are ' "demeaning, dehumanizing, *undignified*, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission...." ' ") (emphasis supplied) (quoting *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir.1983) (in turn quoting *Tinetti v. Wittke*, 479 F.Supp. 486, 491 (E.D.Wis.1979), *aff'd and op. adopted per curiam*, 620 F.2d 160, 161 (7th Cir.1980))); *cf. also Bell v. Wolfish*, 441 U.S. at 576–77,

594, 99 S.Ct. at 1893–94, 1903 (Stevens, J., dissenting) ("the body cavity searches ... represent one of the most grievous offenses against personal dignity and common decency." "The body-cavity search—clearly the greatest personal indignity—may be the least justifiable measure of all the security practices in the institution."); *Doe v. Renfrow*, 631 F.2d 91, 93 (7th Cir. 1980) (per curiam) (strip search of a minor student absent reasonable cause violates "any known principle of human decency" and "exceed[s] the 'bounds of reason' by two and a half country miles.").

The Court is genuinely concerned with the manner, scope and necessity for the strip search under the circumstances of this case. Draper was detained for less than eight hours for the petty offense of public intoxication, and although she could not immediately bond out of jail due to the lack of funds on her person, there was a reasonable likelihood that she could make bond within a relatively short period of time as she made a phone call and arranged bond when she was first given the opportunity at 8:17 a.m. on February 23, 1990; she refused the second opportunity at 8:19 a.m., which was apparently unnecessary. Walsh's brief at Ex. B.

Draper was also cooperative during her arrest and there is no indication that she possessed weapons or contraband. The Fourth Amendment's mandates for reasonable searches are less restrictive on prisoners convicted of crimes than for detainees, such as Draper, who have not even been arraigned, and are held merely on a law enforcement officer's belief that there is probable cause for an arrest. At this stage of detention, and when the detainee is arrested for a petty offense, such as public intoxication, and there is no reasonable, individualized suspicion that the detainee is hiding contraband or weapons, then the Fourth Amendment requires that the detainee not be subjected to the humiliation of being totally stripped of all clothing

---

5. Certain persons may be more offended than others about exposing their unclothed bodies to governmental strangers. For example, certain persons would be more highly susceptible to extreme emotional trauma from being strip searched who had physical deformities or amputations such as mastectomies, obvious venereal diseases such as blisters from genital herpes, hemorrhoids, incontinence, obesity, or menses.

while a government agent visually inspects the naked body for contraband. *See Levoy v. Mills,* 788 F.2d 1437, 1439 (10th Cir.1986) (" ' " '[T]he greater the intrusion, the greater must be the reason for conducting a search.' " ' ") (quoting *Blackburn v. Snow,* 771 F.2d 556, 565 (1st Cir.1985) (quoting *United States v. Afanador,* 567 F.2d 1325, 1328 (5th Cir.1978) (in turn quoting *United States v. Love,* 413 F.Supp. 1122, 1127 (S.D.Tex.), *aff'd,* 538 F.2d 898 (5th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 628 (1976)))); *Mary Beth G. v. City of Chicago,* 723 F.2d at 1273 ("The more intrusive the search, the closer governmental authorities must come to demonstrating probable cause for believing the search will uncover the objects for which the search is conducted.") (citing *Terry v. Ohio,* 392 U.S. 1, 18 n. 15, 88 S.Ct. 1868, 1878 n. 15, 20 L.Ed.2d 889 (1968)); *Cruz v. Finney County, Kan.,* 656 F.Supp. at 1005 ("reasonable suspicion may result from the 'nature of the offense, the arrestee's appearance and conduct, and the prior arrest record.' ") (quoting *Giles v. Ackerman,* 746 F.2d 614, 617 (9th Cir.1984) (per curiam) ("[W]e hold that arrestees charged with minor offenses may be subjected to a strip search only if jail officials possess a reasonable suspicion that the individual arrestee is carrying or concealing contraband."), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985)); *cf. Levoy v. Mills,* 788 F.2d at 1439 ("Given the procedural posture of this case, it would be premature for us to formulate what standard of suspicion must exist before prison officials can conduct a body cavity search. For now, it suffices to say that the government must demonstrate a legitimate need to conduct such a search and that less intrusive measures would not satisfy that need.").

While Walsh contends that there is a general necessity for strip searches, the clearly established law indicates that, without more, such a concern is not enough to overcome the safeguards of the Fourth Amendment. *See Hill v. Bogans,* 735 F.2d at 394. Except for the nature of the suspects' offenses, which both are minor, and the places of the search—one in a public area, the other in a private area—this case is almost indistinguishable from the circumstances in *Hill v. Bogans.* The Court believes that the detention center's paramount interest in institutional security in this case could have been satisfied by a clothed, pat-down search. *See Levoy v. Mills,* 788 F.2d at 1439. Walsh has not convinced this Court that the intermingling of petty offense arrestees with convicted offenders was even necessary, much less prudent. Also, the institution could have explored the possibilities of requiring arrestees to strip down only to underwear, or even consensual strip searches in return for the privilege of transfer into areas that provide more freedom, comfort, or other privileges.

With the exception of reducing the degree of the humiliating impact of the searches, Walsh has otherwise blindly disregarded the lessons taught by *Hill v. Bogans* and has permitted a policy of indiscriminate strip searching, which encompasses the most minor traffic and petty offense arrestees. These persons are subjected to strip searching before a judge has even determined if there is probable cause to support their charges and further detention.

█ Every citizen who happens to enter the jurisdiction of Cleveland County is vulnerable to being subjected to this policy at the discretion of a police officer's belief in probable cause for an arrest for a traffic violation or other minor offense. The Court finds that policy No. 24.01 of the Cleveland County Sheriff's Office is unconstitutional on its face. *See Stewart v. Lubbock County, Tex.,* 767 F.2d 153, 155–57 (5th Cir.1985) (affirming permanent injunction of unconstitutional across-the-board strip search of arrestees, including those charged with public intoxication), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *accord Mary Beth G. v. City of Chicago,* 723 F.2d at 1273 (upholding finding that strip search policy was unreasonable under the Fourth Amendment). The Court therefore concludes that summary judgment cannot be granted on Walsh's qualified immunity defense, which "is available to police officers sued in their individual capacity when they could not reasonably have known that their actions violated the law." *Munz v. Ryan,* 752

F.Supp. 1537, 1540 (D.Kan.1990) (citing *Ross v. Neff*, 905 F.2d 1349, 1354 (10th Cir.1990)); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982) ("If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."); *Melton v. City of Okla. City*, 879 F.2d 706, 731 (10th Cir.) ("[O]fficials are presumed to know and abide by clearly established law."), *reh'g en banc granted in part on other grounds*, 888 F.2d 724 (10th Cir.1989) (per curiam), *on reh'g en banc*, 928 F.2d 920 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991).

Finally, Walsh moves for summary judgment on Draper's claim for punitive damages. However, Draper contends, despite failing to dispute the fact pursuant to W.D.Okla.R. 14(B), that Walsh deliberately acted with reckless indifference to her rights. Viewing the facts as noted above in a light most favorable to the nonmoving party, the Court finds that it cannot grant summary judgment to Walsh on the punitive damages claim. *See Munz v. Ryan*, 752 F.Supp. at 1548 ("Punitive damages are available under § 1983 'when the defendant's conduct is shown to ... involve[ ] reckless or callous indifference to the federally protected rights of others.' ") (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983)); *cf. Lavicky v. Burnett*, 758 F.2d 468, 477 (10th Cir.1985) (holding that arrogant ignorance of the applicable legal rules does not by itself indicate reckless or callous indifference to federally protected rights, but within the context of an unlawful search of an automobile), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 917 (1986)).

## V. CONCLUSION

Accordingly, the Court finds that summary judgment for defendant Walsh is DENIED.

IT IS SO ORDERED.