13 F.3d 406
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Kelly Cleon ROE, Plaintiff-Appellee,
v.
CITY OF CUSHING, a Municipal corporation, Defendant,
and
Terry BRANNON, Defendant-Appellant.
 No. 93-6039.
 United States Court of Appeals, Tenth Circuit.
 Nov. 24, 1993.
 
 1
 Before LOGAN and BRORBY, Circuit Judges, and KANE,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Defendant-Appellant Terry Brannon appeals the district court's denial of his motion for summary judgment on qualified immunity grounds. Because there is a genuine issue of material fact as to whether the force used in arresting Kelly Roe was objectively reasonable, we affirm.
 
 
 4
 Summary judgment decisions are reviewed de novo, applying the same standards as those employed by the district court. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). When a public official raises the defense of qualified immunity, the plaintiff bears the initial burden of showing (1) that the public official's alleged conduct violated the law; and (2) that the law was clearly established when the alleged violation occurred. Hinton v. City of Elwood, 997 F.2d 774, 779 (10th Cir.1993). If such a showing is made, the burden shifts to the public official to demonstrate that there is no genuine issue of material fact as to whether his actions were "objectively reasonable in light of the law and the information he or she possessed at the time." Id. (quoting Coen v. Runner, 854 F.2d 374, 377 (10th Cir.1988)). In making these determinations, the court must evaluate the evidence in the light most favorable to the nonmoving party. Dixon v. Richer, 922 F.2d 1456, 1462 (10th Cir.1991).
 
 
 5
 The first question here is whether Mr. Roe presented specific facts demonstrating that Officer Brannon's conduct violated the current Fourth Amendment standard governing excessive force claims. That is, Mr. Roe must show that Brannon's use of force was not " 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). This standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.
 
 
 6
 Through deposition and trial testimony, Mr. Roe presented the following facts. On the evening of March 16, 1991, Mr. Roe was sitting in a truck with a friend, in a parking lot, talking with Misty Smith and Alicia Evans. Appellant's App. at 46-47. Mr. Roe noticed spilled beer at his feet, and, upon investigation, found one opened and one sealed bottle of beer under the seat. He did not drink any of the beer, but placed the bottles on the seat. Id. at 44-46.
 
 
 7
 Officer Brannon pulled into the parking lot and began speaking to Misty Smith. Seeing the officer, Mr. Roe placed the beer in his jacket and rolled up the truck window. Id. at 47-49. The officer then came over and told Mr. Roe to get out of the truck. When Brannon asked Mr. Roe what was in his jacket, Roe told him it was beer and gave it to the officer. Id. at 50. Officer Brannon told Roe to stand in front of the police car while the officer finished his conversation. Id. at 51. Because it was cold that night, Mr. Roe began to pace back and forth. When Officer Brannon told him to stop pacing, he complied. Id. at 52.
 
 
 8
 Subsequently, a second police car arrived and Officer Ford got out and asked Mr. Roe whether he "had a fucking problem." Id. at 53. Mr. Roe answered "I might, if [you don't] quit fucking with my sisters." Id. at 55. Officer Brannon got out of his vehicle and said something to Roe, to which Roe replied that he was tired of them messing with his sisters. Id. at 56-57. Officer Brannon then informed Roe that he was under arrest, grabbed Roe's right arm, and put him on the hood of the police car. He handcuffed Mr. Roe's right hand, then grabbed his shoulder and took him to the ground. Id. at 58-59. When they landed, Officer Brannon had one knee in the lower part of Mr. Roe's back and one knee in his upper back or neck, causing Roe's head to strike the concrete and cutting his eye. Id. at 60-61.
 
 
 9
 After his head hit the concrete, Mr. Roe's contact lens slipped into the corner of his eye, causing severe pain. Id. at 105. He then began to struggle to get his left hand to his eye while Officer Brannon attempted to handcuff that hand. Id. At this point, Roe admits that he made some motions which could be construed as resisting arrest. Id. at 109-10, 114-15.
 
 
 10
 Mr. Roe was taken to the hospital for his laceration and bruises. He was examined by a family physician, Dr. Hubbard. At Roe's request, a blood alcohol test was taken, which was negative. Id. at 70. Dr. Hubbard also testified that in treating Roe, he did not smell alcohol on Roe's breath. Id. at 77.
 
 
 11
 The following morning, Mr. Roe was charged with possession of an intoxicating beverage by a minor, public intoxication, resisting arrest, and the use of profane and obscene language in public. Id. at 71. He was subsequently convicted of resisting arrest and possession of a nonintoxicating beverage by a minor in a public place.[2] Id. at 75-76.
 
 
 12
 In his affidavit, Officer Brannon agrees with Mr. Roe's statement of the facts until the point at which Roe was placed in front of the patrol car. The stories then diverge. Brannon alleges that Mr. Roe began pacing on several occasions, not just once. Id. at 40. He also claims that upon Officer Ford's arrival, Roe began verbally attacking Officer Ford about harassing his family, requiring Brannon to get out of his car to advise Roe to stand at the corner of the vehicle. Although Mr. Roe complied, he appeared to be angry and upset. Id. at 41. A few seconds later, Roe again began verbally attacking Officer Ford and calling him obscene names. When Officer Brannon asked Mr. Roe his middle name, Roe refused to spell it. When he again began yelling and using profanity, Brannon decided to arrest Roe. Id.
 
 
 13
 Officer Brannon then noticed that Mr. Roe was walking toward Officer Ford with balled up fists. Id. Brannon was concerned because he did not know whether Roe had a weapon, and because there were innocent bystanders at the scene. When Officer Brannon attempted to grab Mr. Roe's wrists, Roe jerked away. Brannon then pushed Roe down to the ground where his head hit the concrete. With Officer Ford's help, Mr. Roe was handcuffed and taken to the hospital. Id. at 41-42.
 
 
 14
 Officer Brannon relies only on this set of facts in arguing that his conduct was objectively reasonable. However, because the facts must be construed in favor of the nonmoving party, Mr. Roe's version of the facts is controlling. See Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir.1993). Thus, the question becomes whether, under Mr. Roe's set of facts, Officer Brannon's conduct was objectively reasonable.
 
 
 15
 Under Mr. Roe's facts, the only action which precipitated Officer Brannon's response was a brief exchange between Roe and Officer Ford. Admittedly, this exchange contained the use of profanity by each of the participants. Mr. Roe's crimes, however, were not severe, and there is little evidence that he posed an immediate threat to the safety of the officers. Although he resisted the arrest, as established conclusively by his conviction, it is not clear that the force used was proportionate to the resistance offered. Given Roe's version of the facts, we are unable to say that the officer's actions of throwing him down and landing on him with both knees, causing his head to strike the concrete, was objectively reasonable. The reasonableness of Officer Brannon's conduct, therefore, presents "a factual inquiry best answered by the fact finder." Quezada v. County of Bernalillo, 944 F.2d 710, 715 (10th Cir.1991).
 
 
 16
 This first question is, in essence, dispositive of this appeal. Because Graham was decided in 1989, two years before the incident in question, the law was clearly established at the time of the incident. This court has held on several occasions that after Graham was decided, it was clearly established that a claim of excessive force in the course of an arrest should be analyzed under the Fourth Amendment standard of objective reasonableness. See Butler, 992 F.2d at 1054; Dixon, 922 F.2d at 1460-61.
 
 
 17
 Further, in excessive force claims, the determination whether the officer's conduct violated the Fourth Amendment also determines whether a reasonable officer could have believed that his conduct was reasonable under the circumstances. Unlike search and seizure cases in which an action taken without probable cause may nevertheless be objectively reasonable, in the excessive force context, the reasonableness inquiry is the same under both the Fourth Amendment and the qualified immunity defense. Quezada, 944 F.2d at 718; Dixon, 922 F.2d at 1463. Officer Brannon, therefore, cannot meet his burden of showing that no material issue of fact remains as to whether his actions were objectively reasonable.
 
 
 18
 The order of the United States District Court for the Western District of Oklahoma is AFFIRMED, and the case is REMANDED for further proceedings.
 
 
 
 **
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 Oklahoma law defines a nonintoxicating beverage as a "beverage[ ] containing more than one-half of one percent ( 1/2 of 1%) alcohol by volume, and not more than three and two-tenths percent (3.2%) alcohol by weight." Okla. Stat. Ann. tit. 37, 163.2(a) (West 1990)