17 F.3d 1436
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Barbara DAVIS, Plaintiff-Appellee,
v.
Barbara McCOY, Defendant-Appellant,
and
Bobbie Welch and City of Sapulpa, Defendants.
 No. 93-5107.
 United States Court of Appeals, Tenth Circuit.
 Feb. 14, 1994.
 
 1
 Before ANDERSON and EBEL, Circuit Judges, and WINDER,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff-appellee Barbara Davis brought this action against defendant-appellant Officer Barbara McCoy, alleging that the officer violated Ms. Davis's civil rights when arresting her on a dog-at-large charge. Officer McCoy unsuccessfully moved for summary judgment based on qualified immunity. Because the district court erred in not granting Officer McCoy summary judgment on one of the claims, we reverse in part and affirm in part, and remand the case for further proceedings.
 
 
 4
 On February 22, 1991, Officer McCoy executed a warrant, issued by a municipal judge, ordering Ms. Davis's arrest for the misdemeanor of allowing a dog to run at large. The parties agree that Ms. Davis's arrest took place at her daughter's house and that Davis was handcuffed and taken to the station wearing only a bathrobe, with no underwear or shoes. The manner in which Ms. Davis was arrested, Officer McCoy's motivations, and the legality of the arrest are disputed.
 
 
 5
 Through affidavits and deposition testimony, Ms. Davis presented the following facts. On February 22, 1991, while Ms. Davis was babysitting her grandchildren and caring for an elderly woman, Officer McCoy entered Ms. Davis's daughter's house. The officer immediately handcuffed Ms. Davis very tightly without telling her that she was under arrest. Appellant's App. at 117-18. Ms. Davis was wearing a thin, see-through bathrobe with no underwear or shoes. Id. at 118, 247, 298. Ms. Davis asked Officer McCoy several times to let her get dressed before going to the police station, but McCoy refused. Id. at 118, 235, 298.
 
 
 6
 Upon leaving the house, Officer McCoy pushed Ms. Davis down the stairs while pulling up on the handcuffs, causing Davis to feel pain. Id. at 118, 222, 253. Officer McCoy then forced Ms. Davis to walk very quickly across a rocky field in her bare feet. Id. at 118, 205-06, 212. As they walked across the field, Officer McCoy kept pushing Ms. Davis and jerking her by the handcuffs, causing Davis to stumble and fall to her knees. Id. at 118, 205-06, 214, 222, 229, 251, 259. When Ms. Davis fell, Officer McCoy pulled her back up with the handcuffs. Id. at 229. Ms. Davis's knees were bruised from the fall and her wrists were cut and bruised from being jerked around in the handcuffs. Id. at 118, 205-07, 214, 230, 232, 247, 250. Officer McCoy then "shoved" or "slammed" Ms. Davis into the police car. Id. at 118, 222, 229, 259.
 
 
 7
 At the police station, Ms. Davis was forced to sit in a public area where several officers laughed at her attire. Id. at 118, 234. When Ms. Davis asked to be placed in a less public cell, Officer McCoy refused, stating "no, you are just fine where you are at." Id. at 118, 234-35. Ms. Davis also alleged that Officer McCoy had a motive to retaliate against Ms. Davis because Ms. Davis had accused her of stealing food stamps. Id. at 117.
 
 
 8
 Officer McCoy denies pushing, shoving, dragging or injuring Ms. Davis. Id. at 49, 140. Officer McCoy also alleges that when Ms. Davis requested that she be allowed to get dressed, Ms. Davis's daughter explained that her mother's clothes were wet in the dryer. Id. at 48. Officer McCoy claims that Ms. Davis then agreed to go to the police station in her bathrobe, which covered her fully from head-to-toe. Id. at 48, 309-10.
 
 
 9
 Officer McCoy presented evidence that the warrant was facially valid and that she had no discretion whether to arrest Ms. Davis pursuant to the warrant. Id. at 47, 193, 339. Officer McCoy also testified that she always handcuffs arrestees and that Ms. Davis "sort of" resisted being placed in handcuffs. Id. at 48, 308.
 
 
 10
 Ms. Davis brought this action against Officer McCoy, alleging violations of 42 U.S.C.1983, based on the use of excessive force and an arrest without probable cause. Officer McCoy moved for summary judgment on qualified immunity grounds. The district court denied her motion, finding that disputed issues of material fact remained preventing the grant of immunity. We have jurisdiction over this interlocutory appeal pursuant to Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) and Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 644 (10th Cir.1988).
 
 
 11
 Summary judgment decisions are reviewed de novo, applying the same standards as those employed by the district court. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). When a public official raises the defense of qualified immunity, the plaintiff bears the initial burden of showing (1) that the public officials' alleged conduct violated the law; and (2) that the law was clearly established when the alleged violation occurred. Hinton v. City of Elwood, 997 F.2d 774, 779 (10th Cir.1993). If such a showing is made, the burden shifts to the public official to demonstrate that there is no genuine issue of material fact as to whether his actions were "objectively reasonable in light of the law and the information he or she possessed at the time." Id. (quoting Coen v. Runner, 854 F.2d 374, 377 (10th Cir.1988)). In making these determinations, the court must evaluate the evidence in the light most favorable to the nonmoving party. Dixon v. Richer, 922 F.2d 1456, 1462 (10th Cir.1991).
 
 Probable Cause
 
 12
 It is undisputed that Ms. Davis was arrested pursuant to a facially valid arrest warrant. She claims, however, that because Officer McCoy knew that she did not own the dog in question, the arrest was without probable cause and violated the Fourth Amendment.
 
 
 13
 An officer who makes an arrest pursuant to a facially valid warrant is entitled to qualified immunity unless no reasonable officer could believe there was sufficient probable cause to issue the warrant. Salmon v. Schwarz, 948 F.2d 1131, 1140 (10th Cir.1991); see also Malley v. Briggs, 475 U.S. 335, 344-45 (1986). Here, the warrant was issued based on the sworn statement of witness Bobbie Welch, identifying Ms. Davis as the owner of the dog in question. Officer McCoy played no part in obtaining the warrant for Ms. Davis's arrest. Because the Constitution does not require a police officer to "investigate independently every claim of innocence" when executing an arrest warrant, Ms. Davis has failed to show that Officer McCoy violated the United States Constitution. Baker v. McCollan, 443 U.S. 137, 145-46 (1979). The district court, therefore, should have granted Officer McCoy qualified immunity on this claim.
 
 
 14
 Ms. Davis argues that her arrest was without probable cause because Okla. Stat. Ann. tit. 11, 28-114, required that she be issued a citation for the misdemeanor of allowing a dog to run loose. Had Officer McCoy simply been responding to a complaint of a dog at large, the Oklahoma statute would have required her to issue a citation. Ms. Davis's arrest, however, was pursuant to a court issued warrant which required Officer McCoy to take Ms. Davis into custody. Compare Okla. Stat. Ann. tit. 11, 28-114(A) with Okla. Stat. Ann. tit. 21, 538; see also Sapulpa City Ordinance No. 1552, 1 (authorizing an officer either to "make arrests or issue written citations" for failure to comply with the animal control ordinances)(emphasis added). Section 28-114 itself distinguishes between the issuance of a citation and an arrest pursuant to a warrant, providing that a warrant shall be issued if a person fails to appear in response to a citation. For these reasons, there is no genuine dispute of material fact as to whether Ms. Davis's arrest was lawful.
 
 Excessive Force
 
 15
 Officer McCoy argues that the district court erred in denying her motion for summary judgment on Ms. Davis's excessive force claim. Viewing all of the facts in Ms. Davis's favor, see Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir.1993), we agree with the district court that sufficient factual disputes remain to submit this claim to a jury.
 
 
 16
 The first question is whether Ms. Davis presented specific facts demonstrating that Officer McCoy's conduct violated the current Fourth Amendment standard governing excessive force claims. That is, Ms. Davis must show that McCoy's use of force was not " 'objectively reasonable' in light of the facts and circumstances confronting [her], without regard to [her] underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). This standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.
 
 
 17
 Here, the misdemeanor of allowing a dog to run at large is certainly not severe. There is no contention that Ms. Davis posed a threat to Officer McCoy's safety. Finally, although there is some indication that Ms. Davis thought about resisting initially, all parties agree that she quickly calmed down and voluntarily submitted to the arrest. Therefore, applying the Graham factors, there is no justification for the application of force.
 
 
 18
 Given Ms. Davis's version of the facts, we are unable to say that the officer's acts of pushing Ms. Davis down the stairs while pulling her arms up, requiring her to walk across a rocky field barefoot in February, clad only in a thin see-through robe, pushing her from behind at such a pace that Ms. Davis fell to her knees, throwing her into a patrol car, and forcing her to stand in a public place where she was subjected to the ridicule of other officers, was objectively reasonable. The reasonableness of Officer McCoy's conduct, therefore, presents "a factual inquiry best answered by the factfinder." Quezada v. County of Bernalillo, 944 F.2d 710, 715 (10th Cir.1991).
 
 
 19
 Our resolution of this first question is, in essence, dispositive of whether Officer McCoy should have been granted summary judgment on the excessive force claim. Because Graham was decided in 1989, two years before the incident in question, the law was clearly established at the time of the incident. This court has held on several occasions that after Graham was decided, it was clearly established that a claim of excessive force in the course of an arrest should be analyzed under the Fourth Amendment standard of objective reasonableness. See Butler, 992 F.2d at 1055; Dixon, 922 F.2d at 1460-61.
 
 
 20
 Further, in excessive force claims, the determination of whether the officer's conduct violated the Fourth Amendment also determines whether a reasonable officer could have believed that his conduct was reasonable under the circumstances. In the excessive force context, the reasonableness inquiry is the same under both the Fourth Amendment and the qualified immunity defense. Quezada, 944 F.2d at 718; Dixon, 922 F.2d at 1463. Officer McCoy, therefore, cannot meet her burden of showing that no material issue of fact remains as to whether her actions were objectively reasonable.
 
 
 21
 The judgment of the district court is REVERSED in part and AFFIRMED in part, and the case is REMANDED for further proceedings consistent with this order and judgment.
 
 
 
 **
 Honorable David K. Winder, Chief Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470