Craig **HILL**, Plaintiff-Appellant,

v.

Robert **BOGANS** and The City and County of Denver, Defendants-Appellees.

No. 81–2503.

United States Court of Appeals, Tenth Circuit.

May 30, 1984.

David M. Berrett of Kleh, Himelspach, Berrett & Will, Denver, Colo., for plaintiff-appellant.

Theodore S. Halaby, Denver, Colo. (Michael P. Bahr, Denver, Colo., with him on brief) of Halaby & Bahr, Denver, Colo., for defendants-appellees.

Before McWILLIAMS and LOGAN, Circuit Judges, and CHILSON, District Judge.*

LOGAN, Circuit Judge.

Plaintiff Craig Hill sued police officer Robert Bogans and the City and County of Denver for damages under 42 U.S.C. § 1983. Hill alleged violations of his rights protected under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. He also asserted pendent claims under the Colorado Constitution.

On April 16, 1979, a county court judge in Denver issued a bench warrant for Hill's arrest for failure to appear on charges of speeding and violating a license restriction. On June 25, 1979, Hill appeared in county court, pleaded guilty to a reduced charge of speeding, and paid an eighteen dollar fine.

On February 1, 1980, Bogans, a Denver police officer, stopped Hill for driving with an expired automobile inspection sticker. In accordance with police procedures, Bogans made a routine warrant check on Hill by calling the police station. After being informed that there was an outstanding bench warrant on Hill, Bogans arrested Hill, handcuffed him, and transported him to the police station.

At the time of his arrest, Hill told Bogans that he had cleared the speeding charge that was the subject of the warrant

---

* The Honorable Hatfield Chilson, Senior United States District Judge for the District of Colora-    do, sitting by designation.

and asked Bogans to verify the validity of the warrant. Bogans verified the warrant over the police radio and again upon arrival at the warrant desk. In fact, the warrant had been withdrawn in June 1979, and presumably Bogans would have learned that fact if he had contacted the county court.

After Bogans delivered Hill to the jail, Hill was given a "pat search" by one of the sheriff's deputies. Hill was then transferred to a holding area for fingerprinting and photographs. At the holding area Hill made several phone calls, including calls to arrange for his bail. Notwithstanding Hill's assurance to one of the officers that bail was on the way he was transferred "upstairs" to the prison area. When the elevator doors opened Hill stepped into a lobby area where he observed ten to twelve people in the immediate vicinity. A guard asked Hill to face the wall immediately across from the elevators and to drop his pants and undershorts. The guards examined his backside and his pants, without touching him, and then permitted Hill to pull up his shorts and trousers. This search procedure was apparently in accordance with procedures applied to all prisoners in the jail.[1] Shortly thereafter Hill was released when his wife arrived and posted bail. Five days later the county court called Hill and told him that a mistake had been made and that he could come to the station and claim his bond.

## I

Hill argues that by failing to check the validity of the warrant when requested to do so, Officer Bogans violated his civil rights. We disagree. Unless a warrant is facially invalid an officer has no constitutional duty to independently determine its validity. *See Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979) ("The Constitution does not guarantee that only the guilty will be arrested.... [W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent."). In judging the immunity of Officer Bogans we use an objective standard of good faith. *Harlow v. Fitzgerald,* 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2737–39, 73 L.Ed.2d 396 (1982). Bogans acted reasonably in relying on routine police procedures for establishing the existence of an outstanding warrant. Bogans should not be held responsible for the failure of county personnel to clear the warrant from the records.

## II

Hill asserts against the City and County of Denver that the search at the jail violated his Fourth Amendment right to be free from unreasonable searches and seizures. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court held that routine strip searching of pretrial detainees is not a per se violation of the Fourth Amendment. The Court stated that determining the propriety of a strip search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of

---

**1.** We note that Colo.Rev.Stat. § 16–3–405 now outlaws strip searches of the type performed in this case. Section 16–3–405 provides, in pertinent part,

"(1) No person arrested for a traffic or a petty offense shall be strip searched, prior to arraignment, unless there is reasonable belief that the individual is concealing a weapon or a controlled substance or that the individual, upon identification, is a parolee or an offender serving a sentence in any correctional facility in the state or that the individual is arrested for driving while under the influence of drugs.

(2) As used in this section, 'strip search' means having an arrested person remove or arrange some or all of his or her clothing so as to permit a visual inspection of the genitals, buttocks, anus, or female breasts of such person.

(3) Any strip search that is conducted shall be performed by a person of the same sex as the arrested person and on premises where the search cannot be observed by persons not physically conducting the search."

the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559, 99 S.Ct. at 1884. *Bell* upheld the Metropolitan Correctional Center's practice of subjecting each prisoner to a visual body cavity inspection after every contact visit with a person from outside the institution. The Court noted that inmate attempts to smuggle money, drugs, weapons, and other contraband into the Metropolitan Correctional Center were documented in the record.

After reviewing the circumstances surrounding the search in the case at bar, we reverse the trial court's ruling that the search complied with the Fourth Amendment, and we remand for a determination of appropriate damages against the City and County of Denver. In reaching this decision we agree with the analysis of the Fourth Circuit in *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). In *Logan* a female attorney, after being arrested on a charge of driving while intoxicated, was taken into a holding cell and subjected to a visual strip search. The search was conducted pursuant to the Arlington County Detention Center's established policy of routinely strip searching all persons held at the detention center for weapons or contraband. *Id.* at 1010. In holding this practice unconstitutional the court wrote,

> "On the undisputed and stipulated evidence, Logan's strip search bore no such discernible relationship to security needs at the Detention Center that, when balanced against the ultimate invasion of personal rights involved, it could reasonably be thought justified. At no time would Logan or similar detainees be intermingled with the general jail population; her offense, though not a minor traffic offense, was nevertheless one not commonly associated by its very nature with the possession of weapons or contraband; there was no cause in her specific case to believe that she might possess either; and when strip-searched, she had been at the Detention Center for one

and one-half hours without even a pat-down search. An indiscriminate strip search policy routinely applied to detainees such as Logan along with all other detainees cannot be constitutionally justified simply on the basis of administrative ease in attending to security consideration."

*Id.* at 1013. *Accord Tinetti v. Wittke*, 479 F.Supp. 486, 490–91 (E.D.Wis.1979), *aff'd*, 620 F.2d 160 (7th Cir.1980).

Although Hill was detained in a separate jail cell, he was briefly intermingled with the prison population. However, intermingling is only one factor to consider in judging the constitutionality of a strip search. *See Smith v. Montgomery County, Maryland*, 547 F.Supp. 592, 598–99 (D.Md.1982). No other conceivable justification exists for the strip search in this case. There were no circumstances here indicating that Hill might possess either a weapon or drugs. Hill was arrested while on his way to work at about 7:30 a.m. for an outstanding speeding ticket and violation of a restriction on his driver's license. These are not offenses associated with the concealment of weapons or contraband in a body cavity. In fact, a peculiar aspect of the strip search in this case is that the officer did not carefully examine Hill's body cavities, but instead merely looked in his trousers and at his buttocks. Almost anything that the examining officer could have found through this procedure would already have been discovered during the pat down search that had been conducted on Hill's arrival at the jail.

In addition to considering the justification for a strip search, *Wolfish* requires us to consider the scope of the particular intrusion and the manner and place in which it is conducted. 441 U.S. at 559, 99 S.Ct. at 1884. Although the search conducted in this case was not as humiliating as a full body cavity search, Hill was required to submit to the search while standing and facing a wall in a room in which ten to twelve people were milling about. A jail's desire to maintain security, to avoid

charges of discriminatory treatment, and to promote administrative convenience simply does not justify routine strip searches in a public area of persons detained for minor traffic offenses.

We affirm the trial court's judgment dismissing Hill's claim against Officer Bogans; we reverse the judgment against the City and County of Denver on the strip search count and remand for further proceedings. Bogans' costs are to be paid by plaintiff Hill; the other costs are to be paid by the City and County of Denver. It is so ordered.