John W. Johnson, Render & Kamas, Wichita, Kan., for plaintiff.

Casey R. Law, Turner & Boisseau, Great Bend, Kan., for defendants.

**Cindy CRUZ, Plaintiff,**

v.

**FINNEY COUNTY, KANSAS and Finney County Law Enforcement Center, Defendants.**

**No. 86–1287.**

United States District Court, D. Kansas.

March 19, 1987.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on cross-motions for summary judgment by defendants, Finney County, Kansas and Finney County Law Enforcement Center, and plaintiff Cindy Cruz. Plaintiff brings this action under 42 U.S.C. § 1983 alleging she was arrested for driving on a suspended license, was subjected to a strip search upon booking, and was detained over night.

In ruling on a motion for summary judgment, the trial court conducts a threshold inquiry of the need for a trial and grants summary judgment where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986). The court is to be concerned with the sufficiency of the evidence, not its weight. *Casper v. C.I.R.,* 805 F.2d 902, 904 (10th Cir.1986.) Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* —— U.S. at ——, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. There is no genuine issue for trial unless there is sufficient evidence—significantly probative or more than merely colorable—favoring the nonmoving party for a jury to return a verdict for that party. —— U.S. at ——, 106 S.Ct. at 2510, 91 L.Ed.2d at 212. Where there is

but one reasonable conclusion as to the verdict and reasonable minds would not differ as to the import of the evidence, summary judgment is appropriate. —— U.S. at ——, 106 S.Ct. at 2511, 91 L.Ed.2d at 213. The moving party is entitled to judgment as a matter of law where the non-moving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986).

The movant's burden under Fed.R.Civ.P. 56 is to make an initial showing of the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345. (10th Cir.1986). To show an absence of material fact, the movant must specify those portions of "the pleadings, deposition, answers to interrogatories and admissions on file, together with affidavits if any." Fed.R.Civ.P. 56(c). "[C]onclusory assertions to aver the absence of evidence remain insufficient to meet this burden." *Windon*, 805 F.2d at 345 n. 7. The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in 56(c), which demonstrate a genuine issue remaining for trial. *Anderson*, —— U.S. at ——, 106 S.Ct. at 2511, 91 L.Ed.2d at 213. The evidence of the nonmoving party is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." (citation omitted.) *Celotex Corp. v. Catrett*, —— U.S. at ——, 106 S.Ct. at 2555, 91 L.Ed.2d at 276.

For purposes of these motions, the uncontroverted facts include:

1. On February 21, 1984, the plaintiff was stopped by a Garden City Police officer for speeding in a school zone. From a computer license check, the officer was informed that plaintiff's license had previously been suspended. Plaintiff was released at that time.

2. The officer later obtained a certified copy of plaintiff's driving record which showed that plaintiff's license was suspended prior to February 21, 1984.

3. This Garden City Police officer was working the midnight shift, 11:00 p.m. to 7:30 p.m., on April 3, 1984. That night he arrested plaintiff at her home around 11:20 to 11:30 p.m. She was handcuffed and taken to the Finney County Law Enforcement Center.

4. Upon her arrival at the Law Enforcement Center, plaintiff was immediately taken to the jail floor and given a pat-down search. Plaintiff was transferred to the booking room where the necessary paperwork was completed. Plaintiff was then photographed and fingerprinted.

5. It is the defendants' practice that once the booking of a prisoner is complete, the jail personnel explain to the prisoner the applicable bond and give them an opportunity to call someone, arrange for bail, and thereby forego the need for being strip searched and placed in jail.

6. After being offered the opportunity to use the phone, plaintiff said she didn't know of anybody that she could contact. Unable to post the bond, plaintiff was strip searched and placed in a female dormitory, occupied by one other female inmate.

7. It was the policy of the Finney County Sheriff's Department that all detainees, regardless of the offense charged, who are to be transferred to the inmate living area, are strip searched, as part of a process of removing their civilian clothes, showering, and being clothed in jail coveralls. The policy requires that the searches be conducted in private rooms in the sole presence of a searcher of the same sex as the detainee; that the detainee remain fully clothed for as much of the search as possible; that the search is performed quickly, professionally and courteously; and that the detainees are not to be touched nor subjected to body cavity searches.

8. Deputy Shirla Holmes has stated that the strip search procedure entailed the arrestee removing all clothes, bending over and spreading his or her buttocks for visual inspection. The arrestee is also required to squat and make a grunting sound.

9. Defendants offer several reasons for conducting strip searches on all detainees placed in the inmate living area—protect the integrity of the jail, the safety of the inmates, and the safety of jail personnel.

10. In a deposition taken at an earlier date in another case, plaintiff stated that she was not touched by the female officer during the strip search. In her deposition in this case, plaintiff stated that the officer touched her ears and lifted her breasts during the search. Other than these alleged touchings, plaintiff's search was in accordance with the Finney County Sheriff's policy.

11. After spending the night in jail, plaintiff discussed her circumstances with a warrant officer, Anna Gallerdo. Upon being told that plaintiff had been arrested without a warrant and was being held, the Sheriff instructed that plaintiff should be released on her own recognizance.

12. The city of Garden City is no longer a party to this action having settled with plaintiff.

Defendants contend there is no question of material fact to prevent a finding that the strip search of plaintiff complied with Finney County jail policy. The differences in plaintiff's deposition testimony in the earlier case and the present case appear to be an instance of inconsistent testimony rather than a contradiction of prior testimony which could be regarded as a sham issue of fact. Cf. *Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1462 (9th Cir. 1985), *cert. denied* — U.S. —, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). There being questions of material fact on whether plaintiff's strip search was performed in accordance with county jail policy, the court denies summary judgment on that issue.

Apparently, the parties agree the constitutionality of the Finney County jail policy on strip searches is an issue appropriate for summary judgment. Defendants argue the court can and should uphold the jail policy by following their interpretation of *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), and *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Plaintiff refers the court to numerous federal court decisions where strip searches of persons charged with traffic offenses or minor misdemeanors have been held to violate the Fourth Amendment.

The Fourth Amendment, as incorporated into the Fourteenth Amendment, provides in relevant part:

> [T]he right of the people to be secured in their persons ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause....

The issue before this court is whether the Finney County jail policy on strip searches is unreasonable under established Fourth Amendment principles. Searches incident to an arrest have been found reasonable by the Supreme Court, but those searches were less intrusive than a strip search. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1967); *Giles v. Ackerman,* 746 F.2d 614, 616 (9th Cir. 1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985).

After summarizing their criticisms of the circuit court decisions, defendants began their analysis with a thorough discussion of *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861. Much of defendants' analysis of *Wolfish* is mistaken. In *Wolfish,* the pretrial detainees of one facility brought a class action challenging numerous conditions of confinement and practice, including the practice of body searches of all inmates following a contact visit with a person from outside the institution. In deciding challenges to certain conditions other than the practice of strip searches, the Supreme Court employed an analysis of whether the disability imposed on the pretrial detainees amounted to "punishment" in the constitutional sense. *Wolfish,* 441 U.S. at 537, 99 S.Ct. at

1873. "[W]hat is at issue when an aspect of pretrial detention that is not alleged to violate any express guarantee of the Constitution is challenged, is the detainee's right to be free from punishment...." 441 U.S. at 534, 99 S.Ct. at 1871. After addressing constitutional challenges to such conditions as double-bunking and restrictions on in-coming mail, the court considered the strip search practice against the express constitutional prohibition under the Fourth Amendment against unreasonable searches. Contrary to defendants' interpretations, the Supreme Court did not use the "punishment" test under the due process clause in addressing the practice of strip searches.

The Fourth Amendment protection against unreasonable searches is not a precise or mechanically applied principle. In *Wolfish*, the Supreme Court stated:

> In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. (citations omitted.)

441 U.S. at 559, 99 S.Ct. at 1884. The justification for the strip search policy was to address the problem of weapons and contraband being smuggled into detention facilities. *Id.* The Supreme Court concluded from balancing the significant security interests of a facility against the inmate's privacy interests that visual body-cavity inspections could be conducted on less than probable cause. 441 U.S. 560, 99 S.Ct. at 1885.

In 1984, the Supreme Court once again employed the due process "punishment" analysis to a class action brought by pretrial detainees challenging a jail policy denying them contact visits and a jail practice of irregularly scheduled shakedown searches of cells in the absence of cell occupants. *Block v. Rutherford*, 468 U.S. at 576, 104 S.Ct. at 3227. The decision in *Block* does not develop nor directly rely on

the discussion in *Wolfish* regarding the balancing test for a strip search policy.

Numerous decisions of the circuit courts, including the Tenth Circuit, have distinguished the facts and limited the scope of the *Wolfish* decision. In *Hill v. Bogans*, 735 F.2d 391 (10th Cir.1984), the plaintiff was arrested on an outstanding bench warrant after being stopped at 7:30 a.m. for driving with an expired automobile inspection sticker. Hill was taken to the jail and given a "pat search." After fingerprinting and photographs, he was moved to the holding cell where he made several calls to arrange for bail. Even though Hill assured the officers that bail was going to be made, he was transferred to the prison area where he was strip searched in accordance with jail procedures. The search was performed in a room with 10 to 12 people milling about. Hill was then briefly placed with the prison population and released shortly thereafter. 735 F.2d at 393–94. The Tenth Circuit held the search violated Fourth Amendment principles, agreeing with the analysis in *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). The Tenth Circuit found "no conceivable justification" for the strip search, as there were no circumstances to indicate that Hill might possess either a weapon or contraband. 735 F.2d at 394. The court concluded:

> A jail's desire to maintain security, to avoid charges of discriminatory treatment and to promote administrative convenience simply does not justify routine strip searches in a public area of persons detained for minor traffic offenses.

735 F.2d at 394–95. The Tenth Circuit did not consider the intermingling of Hill with the general prison population to be a decisive factor in the balancing test of reasonableness. 735 F.2d at 394.

The Tenth Circuit affirmed the denial of recovery under § 1983 for a strip search in *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433–34 (10th Cir.1984), *vacated for reconsideration on other grounds*, — U.S. ——, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), *aff'd*, 796 F.2d 1307 (10th Cir.), *cert.*

*denied,* — U.S. —, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986). After transporting plaintiffs, the officers found a roach clip on one plaintiff and marijuana in the police car left there apparently by one of the plaintiffs. The plaintiffs were charged with, *inter alia,* assault and battery. The officers also had received information that one of the plaintiffs was carrying a knife. The Tenth Circuit held that "[a] strip search is not improper when a suspect is going to be placed in the general jail population and has been charged with a drug offense such as possession of marijuana. (Citation omitted.)" *Lusby,* 749 F.2d at 1434.

In a recent decision, the Tenth Circuit reversed the district court's dismissal of a § 1983 action by a prisoner who was selected from ten other prisoners, who were returning from an inmate activities area, to undergo an anal body cavity search. *Levoy v. Mills,* 788 F.2d 1437, 1439 (10th Cir.1986). The Tenth Circuit first recognized the established Fourth Amendment principle that " 'the greater the intrusion, the greater must be the reason for conducting a search.' " 788 F.2d at 1439, quoting *Blackburn v. Snow,* 771 F.2d 556, 565 (1st Cir.1985). The case being premature for enunciating a standard when a prison official may perform a body cavity search, the Tenth Circuit stated "that the government must demonstrate a legitimate need to conduct such a search and that less intrusive measures would not satisfy that need. (citation omitted.)" *Levoy,* 788 F.2d at 1439.

The court has reviewed several decisions from other circuits on the constitutionality of strip searches conducted on those arrested for traffic violations or minor offenses. *Ward v. County of San Diego,* 791 F.2d 1329 (9th Cir.1986); *Jones v. Edwards,* 770 F.2d 739 (8th Cir.1985); *Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir. 1983); *Dufrin v. Spreen,* 712 F.2d 1084 (6th Cir.1983); *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981). While a lengthy discussion of these decisions is unnecessary, there are several points worth noting. First, the *Wolfish* case involved more serious security dangers than involved in these cases and the case at bar. *See Giles v. Ackerman,* 746 F.2d at 617; *Mary Beth G.,*

723 F.2d at 1273. In *Wolfish,* the strip search policy applied to those detainees who were unable to make bail, were awaiting trial, and were returning from a contact visit with a person from outside the institution. These inmates were charged with offenses more serious than minor traffic violations and were being held for substantial pretrial periods. The strip searches were intended to discourage the smuggling of weapons and contraband from visitors to inmates. *See Block v. Rutherford,* 468 U.S. at 587–88, 104 S.Ct. at 3233–34.

Second, the justification prong (need for the search) of the *Wolfish* balancing test in these decisions did not constitute serious concerns that contraband or weapons would be on the arrestee. The nature of the offense upon which the arrest was made did not create any reasonable fears of security risks. *See Jones v. Edwards,* 770 F.2d at 741 (failure to sign summons and complaint arising from a leash law violation); *Giles v. Ackerman,* 746 F.2d at 615 (outstanding parking tickets); *but cf. Dufrin v. Spreen,* 712 F.2d 1084 (assault of daughter with a broom handle). The officers also had no reasonable suspicion that the arrestee was carrying or concealing contraband. In these circumstances, reasonable suspicion may result from the "nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Giles,* 746 F.2d at 617.

Third, the strip search is a substantial intrusion of personal rights. Strip searches involving the visual inspection of the anal and genital areas are " 'demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission....' " *Mary Beth G.,* 723 F.2d at 1272, quoting *Tinetti v. Wittke,* 479 F.Supp. 486, 491 (E.D.Wis.1979), adopted at 620 F.2d 160 (7th Cir.1980). See also *Levoy v. Mills,* 788 F.2d at 1439; *Smith v. Montgomery County, Md.,* 547 F.Supp. 592, 597 (D.Md.1982). The security interest of jails called into question by the arrest of traffic law violators and misdemeanor offenders were outweighed by the invasion of privacy

caused by these offensive procedures. *Mary Beth G.*, 723 F.2d at 1272.

Finally, the courts are not substituting their viewpoints on the administration of jails for those of the actual administrators. *Giles*, 746 F.2d at 617. The courts must not ignore the deference due the prison administrators. *Block*, 468 U.S. at 591, 104 S.Ct. at 3235. In these cases the courts are not suggesting what procedures short of strip searches should be employed. *Giles*, 746 F.2d at 618. Simply put, the courts have found constitutional violations in that the privacy interests harmed outweigh the security risks protected.

■ The above discussion sets forth the reasons for finding the Finney County jail policy on strip searches to be unconstitutional. Without regard to any circumstances unique to the individual, arrested for a traffic violation or minor offense, the arrestee is subjected to a strip search if placement in the inmate living area is to occur for any period of time. The Tenth Circuit has held that this sole factor—intermingling with general jail population—does not constitute an adequate reason for subjecting those arrested on minor traffic violations to a strip search. *Hill v. Bogans*, 735 F.2d at 394. This blanket policy on strip searches is unconstitutional under the balancing test of *Wolfish* as applied by the Tenth Circuit.

In their response to plaintiff's cross-motion for summary judgment, defendants raise a new and novel argument which needs only a brief discussion. Although conceding their policy is to strip search all arrestees to be detained in the inmate living area, the defendants contend the plaintiff's search was not pursuant to defendants' custom, policy or practice as it is not Finney County's policy to incarcerate, and therefore strip search, persons charged with driving on suspended licenses. In the present case, it is uncontroverted that a Garden City police officer arrested plaintiff and took her to the county law enforcement center. The city officer also completed some of the booking procedures. It is apparent that defendants seek to blend together the distinct acts of the arrest and the later strip search at the jail house into a single policy or custom, particularly since the city is no longer a party to the case. The fact that the county may have a policy against arresting those charged with driving on suspended licenses does not apply to the circumstances of this case where the county took into custody and strip searched plaintiff upon her arrest by a city police officer. While the combined operation of the county's policies on arrests of traffic violations and strip searches could prevent strip searches of those *stopped* for traffic violations by county officers, it is apparent the jail policy on strip searches is not limited to those arrested by county officers. As shown in this case, the Finney County jail policy allows strip searches for those arrested on traffic violations.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is denied, and the plaintiff's motion for partial summary judgment is granted.