Kristin FOOTE, Plaintiff,

v.

Roger SPIEGEL, et al., Defendants.

Civil No. 2:94–CV–754.

United States District Court,
D. Utah,
Central Division.

Feb. 23, 1998.

Lauren R. Barros, Disability Law Center, Salt Lake City, UT, Randy M. Lish, W. Andrew McCullough, McCullough, Jones & Ivins, Orem, UT, Pamela M. Martinson, American Civil Liberties Union of Utah, Salt Lake City, UT, for Kristin Foote.

Monette Hurtado, Weber County Attorney Office, Ogden, for Weber County.

Dan R. Larsen, Rebecca D. Waldron, Utah Attorney General's Office, Salt Lake City, for Spiegel & Howe & State of Utah.

Robert R. Wallace, Hanson, Epperson & Wallace, Salt Lake City, for C. Williams and Davis County.

Martha S. Stonebrook, Utah Attorney General's Office Litigation Unit, Salt Lake City, for UT State Dept. of Public Safety.

## ORDER

CAMPBELL, District Judge.

This matter comes before the court on plaintiff's motion for partial summary judgment against defendant Catherine Williams and defendant Davis County, Utah. The court conducted a hearing on this motion on December 15, 1997. Mr. Andrew McCullough and Ms. Pamela Martinson appeared on behalf of plaintiff. Mr. Robert Wallace and Mr. Gary McKee appeared on behalf of the defendants. Having fully considered the arguments of counsel, the submissions of the parties and applicable legal authority, the court now enters the following order.

### Background

The facts underlying this lawsuit are, briefly, as follows.[1] On May 8, 1994, defendant Howe, a Utah Highway Patrol ("UHP") officer, pulled over a car driven by plaintiff. Defendant Spiegel, a drug recognition expert with the UHP, subsequently arrested plaintiff and brought her to the Davis County jail. While at the jail, and prior to her booking, plaintiff was strip searched by defendant Williams, a correctional deputy.

This motion for summary judgment presents two issues. First, is defendant Williams liable for performing the strip search? Second, is Davis County liable for causing the strip search because of its policies or customs?

### Discussion

I. *Defendant Williams is Liable as a Matter of Law for Violations of Plaintiff's Fourth Amendment Rights.*

A. *The Strip Search Violated the Fourth Amendment Prohibition Against Unreasonable Searches.*

■ In this circuit, prisoners and detainees retain a limited Fourth Amendment right to privacy in their bodies, *Hayes v. Marriott,* 70 F.3d 1144, 1146 (10th Cir.1995), including a Fourth Amendment right to have searches conducted reasonably. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court identified four aspects of the search process that might cause a given search to be deemed reasonable or unreasonable:

> [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider [(1)] the scope of the particular intrusion, [(2)] the manner in which it is conducted, [(3)] the justification for initiating it, and [(4)] the place in which it is conducted.

*Id.* at 559 (*quoted with approval in Hayes,* 70 F.3d at 1147). Of these four *Bell* factors, three are not disputed by the parties in this case. All agree that the plaintiff was strip searched, that the search was conducted in a safe manner that minimized physical contact, and that the search did not occur in an area that exposed the plaintiff to undue observation by others. The only question remaining, therefore, is whether there was a sufficient justification for initiating the strip search.[2]

---

1. The facts of this much-litigated case are more fully set out in two previous decisions: *Foote v. Spiegel,* 903 F.Supp. 1463 (D.Utah 1995), and *Foote v. Spiegel,* 118 F.3d 1416 (10th Cir.1997).

2. Since *Bell v. Wolfish* was decided, the Supreme Court's subsequent decisions in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), have

The material facts concerning defendant Williams' justification for the strip search of plaintiff are not in dispute. Williams was a correctional deputy at the Davis County jail at the time of plaintiff's arrest. When UHP officer Spiegel brought plaintiff to the jail facility, defendant Williams was the intake officer on duty. Defendant Williams was not initially informed by the UHP officer of the basis for plaintiff's arrest. In her role as intake officer, Williams conducted a pat-down search of plaintiff in anticipation of plaintiff's imminent booking. The pat-down search revealed no weapons, contraband, or anything else out of the ordinary.

At some point in this process, defendant Williams began to form the opinion that plaintiff was under the influence of drugs or alcohol. Williams' suspicions were reinforced by the actions of trooper Spiegel, who conducted tests for drug and alcohol influence on plaintiff in Williams' presence. Williams' belief that plaintiff was under the influence of drugs or alcohol was further confirmed when Speigel requested that Williams strip search plaintiff. Because Spiegel and Williams had reached the same conclusion that plaintiff was under the influence of drugs or alcohol, Williams believed she had cause to conduct a strip search of plaintiff. No drugs or contraband of any kind were found in the strip search. Plaintiff was never placed in the general jail population and was released on bail several hours after her arrival.

■ On these facts, the court has no difficulty concluding that defendant Williams lacked an adequate justification for conducting the strip search. The Tenth Circuit's decision in this very matter on interlocutory appeal speaks adequately to the unreasonableness of Williams' actions:

> *Cottrell* rejected the proposition that it is reasonable to assume a person arrested for

---

unsettled the proper test to be applied when reviewing Fourth Amendment claims by prisoners and detainees. For the reasons explained below, the court will apply an unmodified *Bell* test in this case.

In *Turner v. Safley*, the Supreme Court considered a prisoner's challenge under the First and Fourteenth Amendments to prison regulations which restricted written correspondence and the prisoner's ability to marry. Disapproving the Eighth Circuit's decision to apply strict scrutiny to the prison regulations, the Supreme Court stated that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. In order to assist lower courts in determining the reasonableness of prison regulations, the Supreme Court formulated four factors for consideration:

> (1) whether there is a valid, rational connection between the prison regulation or practice and a legitimate governmental interest; (2) whether the regulation or practice allows inmates an alternative means of exercising the subject constitutional right; (3) the impact of accommodation of the asserted right on guards, other inmates, and the allocation of resources generally; and (4) the absence of ready alternatives to the regulation or practice.

*Hayes*, 70 F.3d at 1146 (summarizing *Turner* factors).

Three years later in *Washington v. Harper*, the Court considered an application of the strict scrutiny standard by the Washington Supreme Court to prison regulations allowing for the involuntary medication of prisoners. *Washington*, 494 U.S. at 223. Again disapproving this heightened standard of review, the Court stated emphatically that "the standard of review we adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights." *Id.* at 224.

The Supreme Court's decision in *Washington* has led to some uncertainty among the lower courts as to the proper relationship between the *Bell* factors and the *Turner* factors in Fourth Amendment cases. *See, e.g., Hayes* 70 F.3d at 1146–47 (applying *Bell* and *Turner* factors jointly); *Jordan v. Gardner*, 986 F.2d 1521, 1535 (9th Cir.1993) (Reinhardt, J., concurring) (finding that *Turner* "distills the original principles of *Bell*"); *Michenfelder v. Sumner*, 860 F.2d 328, 331 n. 1 (9th Cir.1988) (noting that the second *Turner* factor is "much more meaningful in the first amendment context than the fourth, where the right is to be free from a particular wrong").

After careful consideration, this court determines that the Supreme Court's decision in *Washington* only commands use of the *Turner* "standard of review" (*i.e.*, reasonableness instead of strict scrutiny) when assessing prisoners' or detainees' constitutional claims; it does not command the use of the *Turner* factors themselves. Because the Fourth Amendment test is already one of reasonableness under the circumstances, the court finds that the *Bell* factors, formulated specifically for use in the Fourth Amendment context, are more appropriate for use in this case than the factors promulgated in *Turner*.

driving while under the influence of drugs has drugs concealed on his or her body simply because none were found in the vehicle or in a thorough pat-down search. The record establishes a thorough pat-down search through Foote's light summer clothing did not reveal anything. Almost anything the strip search could have revealed would already have been discovered in the pat-down search ....

Foote was not suspected of trying to smuggle contraband into a prison or smuggle cocaine or heroin through customs .... It may be reasonable to believe a person ... under the influence of marijuana could have marijuana in a pocket, a bag, or other container ....However, because ... a thorough pat-down search at the jail had revealed no drugs, the strip search could be justified only if it were reasonable to believe persons ... under the influence of marijuana, who have no particular reason to expect they will be searched, routinely carry a personal stash in a body cavity. That belief is unreasonable.

*Foote v. Spiegel,* 118 F.3d at 1425–26 (internal citations omitted).

■ In this case, defendant Williams had no information about the charges against Foote or the circumstances of her arrest. The only reason that Williams conducted the strip search was that she personally believed plaintiff to be under the influence of drugs or alcohol and she observed that defendant Spiegel shared this belief. As the Tenth Circuit has held, however, suspicion that a person may be under the influence of drugs or alcohol could not have provided defendant Williams with a *reasonable* suspicion that plaintiff was hiding drugs or contraband in a body cavity. Because there is no adequate justification for the search within the meaning of *Bell v. Wolfish,* the court concludes as a matter of law that defendant Williams' actions violated plaintiff's Fourth Amendment right to be free from unreasonable searches.

B. *Defendant Williams Has No Claim to Qualified Immunity.*

■ The next issue this court must address is whether, despite the violation of plaintiff's constitutional rights, defendant Williams enjoys qualified immunity for her actions. The framework for analyzing a claim of qualified immunity on a motion for summary judgment is as follows:

[f]irst we must ask what was the clearly established law with regard to plaintiffs' constitutional rights at the time those rights were allegedly violated .... If the law was not clearly established at the time then [the defendant] is entitled to dismissal of the action because he could not have known that he was violating that right. Second, if the law was clearly established, we must ask whether [the defendant's] conduct was "objectively reasonable" in light of this clearly established law.

*Breidenbach v. Bolish,* 126 F.3d.1288, 1291 (10th Cir.1997). The plaintiff bears the burden of establishing that the law was clearly established and that the defendant violated it. *Hollingsworth v. Hill,* 110 F.3d 733, 738 (10th Cir.1997). Once the plaintiff has satisfied this burden the qualified immunity defense "will ordinarily fail." *Id.* at 740. At that point, the defendant can only avoid suit if "he can demonstrate that 'extraordinary circumstances' intervened and so 'prevented [him] from knowing that his actions were unconstitutional that he should not be imputed with knowledge of an admittedly clearly established right.'" *Id.* (internal citations omitted).

Thus, the court first will consider whether the law regarding strip searches was clearly established in 1994. If the law was clearly established, the qualified immunity defense will fail unless defendant Williams can show that some extraordinary factor prevented her from appreciating the objectively unreasonable quality of her actions.

1. *State of Fourth Amendment Law in 1994.*

■ It was clearly established in 1994 that a strip search of a detainee, not entering the general jail population, could only be justified by particularized suspicion that the detainee was concealing contraband in a place where it could not be felt during a rub search. In

*Cottrell v. Kaysville City, Utah,* 994 F.2d 730 (10th Cir.1993), the Tenth Circuit addressed the validity of a strip search in the very same Davis County jail where defendant Williams worked. The plaintiff in *Cottrell* was arrested for driving under the influence of drugs or alcohol. As in the case at bar, Cottrell was taken to the Davis County jail where officers performed a pat-down search through her "light summer clothes." *Id.* at 732. When no drugs or other contraband were discovered during the pat-down search, the officers proceeded to strip search the plaintiff to determine if she was concealing drugs in a body cavity. No weapons or contraband of any kind were ever found and Cottrell was never placed in the general jail population.

The district court in *Cottrell* granted summary judgment to the individual defendants. On appeal, the Tenth Circuit reversed:

> Specifically, the district court determined it was reasonable for the officers to assume Ms. Cottrell had drugs concealed on her body because none were found on her person, or in her car . . . . These conclusions are unsupportable . . . pursuant to applicable law.
>
> This court has often spoken of the constitutional implications of conducting a strip search . . . .
>
> We fail to see how this particular search . . . could be considered reasonable as a matter of law. In his deposition, Officer Nace stated that he did not suspect Ms. Cottrell of having drugs on her person . . . .
>
> In addition . . . there is nothing in the record to indicate Ms. Cottrell was ever placed in the general jail population. Courts have consistently recognized a distinction between detainees awaiting bail and those entering the jail population when evaluating the necessity of a strip search under constitutional standards . . . .
>
> Finally . . . Ms. Cottrell was wearing light summer clothing. She had already been through a thorough pat down search. We agree with the statement made in *Hill*

that "almost anything that the examining officer could have found through this procedure would already have been discovered during the pat down search."

*Id.* at 734–35 (*citing Justice v. City of Peachtree City,* 961 F.2d 188, 193 (11th Cir.1992) (overriding concerns in conducting strip search are security and concealed contraband); *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1448 (9th Cir.1991) (recognizing distinction between detainees awaiting bail and those entering the jail population when evaluating the necessity of a strip search); *and Draper v. Walsh,* 790 F.Supp. 1553, 1559 (W.D.Okla.1991) (strip search questioned where detainee was held for less than eight hours on public intoxication charge and there was no reasonable suspicion of contraband or weapons)). *See also, Hill v. Bogans,* 735 F.2d 391 (10th Cir.1984), *and Chapman v. Nichols,* 989 F.2d 393 (10th Cir.1993) (both discussed in Section II, *infra).*

Given that there were several Tenth Circuit decisions directly on point prior to 1994, the court finds that the law in this case was clearly established at the time of defendant Williams' actions.

**2. *Should Williams Have Known that Her Unreasonable Conduct Violated Clearly Established Law?***

The next question is whether defendant can show that, despite violating clearly established law, she should nevertheless receive immunity because of exceptional circumstances. This second inquiry is necessary because, even where the law is clearly established, the factual circumstances may be such that an official has an objectively reasonable basis for believing that her acts do not violate that clearly established law. In many areas of constitutional law requiring close judgment calls by government officers, this prong of the qualified immunity analysis provides a substantial, and appropriate, shield to liability.

This is not necessarily the case when Fourth Amendment claims are at issue, though. "While qualified immunity is a pow-

erful defense in other contexts," its usefulness to defendants in Fourth Amendment cases is limited. *Quezada v. County of Bernalillo,* 944 F.2d 710, 719 (10th Cir.1991). Under Fourth Amendment jurisprudence, the basic inquiry is whether the officer's action were reasonable under all the circumstances. A finding of a constitutional violation, *i.e.,* unreasonable governmental intrusion, tends also to resolve the question whether the officer could reasonably have believed that his or her behavior comported with the requirements of the Fourth Amendment. As the Tenth Circuit has noted in Fourth Amendment excessive force cases, "[n]o officer could reasonably believe that the use of unreasonable force did not violate clearly established law .... This is one of the rare circumstances where the determination of liability and the availability of qualified immunity depend on the same findings." *Street v. Parham,* 929 F.2d 537, 540 (10th Cir.1991).

In unreasonable search cases, there is slightly more room for the qualified immunity analysis to diverge from the Fourth Amendment analysis than in the excessive force cases:

> In general, even though conduct is "unreasonable" under the Fourth Amendment, because of the "difficulty of determining whether particular searches or seizures comport with the Fourth Amendment," such conduct may nevertheless be objectively reasonable for purposes of qualified immunity .... [E]ven if a court decides that there was no probable cause, *in a close case* it may have been objectively reasonable for a police officer to rely on the judgment of the magistrate and believe that probable cause existed.

*Dixon v. Richer,* 922 F.2d 1456, 1463 (10th Cir.1991) (emphasis added) (internal citations omitted).

Defendant Williams suggests that this is the type of "close case" anticipated by *Dixon* because she relied in good faith on defendant Spiegel's request for a strip search. In essence, defendant Williams argues that, under the second prong of the qualified immunity analysis, her reliance on defendant Spiegel's request prevented her from realizing that her actions were objectively unreasonable. In support of this argument, defendant directs the court's attention to authorities which create an exception to liability when an officer in the field arrests without probable cause based on a request from another jurisdiction. *See, e.g., Whiteley v. Warden, Wyo. State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, (1971); *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The court finds these authorities to be distinguishable on their facts.

The cases relied upon by defendant create a sensible exception to liability because of the exigent circumstances that confront law enforcement officers in the field. A requirement that an officer independently investigate another jurisdiction's basis for requesting an arrest, prior to acting, would place a ruinous burden on police activities; the suspect would be gone long before such a process could be completed:

> [E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, *who must often act swiftly,* cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.

*U.S. v. Robinson,* 536 F.2d 1298, 1299 (9th Cir.1976) (emphasis added). This exception to liability could also be understood merely as a restatement of the general rule: it is objectively reasonable for officers in the field to rely upon requests from other jurisdictions when making an arrest.

■ The facts now before the court do not support a similar conclusion where defendant Williams is concerned. Needless to say, there were no exigent circumstances in this case. Plaintiff was already in custody at the Davis County jail and there was no possibility of flight. The burden at that point on defendant Williams to inquire whether defen-

dant Spiegel had reason to believe that plaintiff was concealing drugs or contraband in a body cavity would have been minimal. By contrast, the nature of the impending invasion of plaintiff's rights was severe. Thus, the court concludes that the field arrest exception is not applicable on the facts of this case. Or, framed more positively, it was not objectively reasonable for defendant Williams to strip search plaintiff, based solely upon defendant Spiegel's request, when she was aware of no reasonable suspicion that plaintiff was concealing drugs in a body cavity. Defendant Williams admitted as much in her own deposition testimony. *See* Williams Dep. at 33 ("I've also been in the system long enough to know that I don't automatically trust police officers . . .").

■ Defendant Williams knew that, under applicable law, strip searches of detainees could only be justified by reasonable suspicion. She was also aware that she herself did not have reasonable suspicion based on the information then available to her. She cannot, absent exigent circumstances, avoid liability simply by strip searching an uncharged suspect at the request of a Utah Highway Patrol officer.

The court therefore finds no exceptional circumstances which would justify a grant of immunity to defendant Williams despite the fact that she violated clearly established law.

II. *Davis County is Liable for Failing to Promulgate An Adequate Strip Search Policy.*

The Davis County jail policy on strip searches reads in relevant part as follows:

Strip Search

■ 1. The strip search is permissible when:

   a. The offense for which the detainee was arrested was a violent offense;

   b. The detainee would be coming in contact with the general jail population;

   . . . .

2. The strip search is not permissible when:

   a. When the detainee is arrested for traffic violations or minor offenses when they are unrelated to drugs, weapons, or predatory conduct.

(Davis County Strip Search Policy, attached as Exhibit E to Plaintiff's Mem. in Supp.) Even a cursory reading of the policy immediately reveals its deficiencies. There is nothing in the above-quoted language which either explicitly or implicitly incorporates the strip search standards announced by the Tenth Circuit and other courts of appeals: a detainee who is not entering the general jail population may not be strip searched in the absence of reasonable suspicion (1) that drugs or contraband are concealed on the person and (2) that such drugs or contraband will not be discovered through a pat or rub search. The Tenth Circuit has had the opportunity to consider strip search policies which do not incorporate these reasonable suspicion standards; it has consistently rejected them as unconstitutional.

In *Hill v. Bogans,* 735 F.2d 391 (10th Cir.1984), for instance, the plaintiff was arrested for an outstanding speeding ticket, taken to the jail and subjected to a suspicionless strip search under jail policy. The district court granted judgment for the municipal defendant. Quoting at length from the Fourth Circuit's decision in *Logan v. Shealy,* the Tenth Circuit reversed the ruling of the district court and ordered the entry of judgment against the City and County of Denver:

"On the undisputed . . . evidence, Logan's strip search bore no such discernable relationship to security needs at the Detention Center that, when balanced against the ultimate invasion of personal rights involved, it could reasonably be thought justified. At no time would Logan or similar detainees be intermingled with the general jail population; her offense [of drunk driving], though not a minor traffic offense, was nevertheless one not commonly associated by its very nature with the possession of weapons or contraband; there was no

cause in her specific case to believe that she might possess either .... An indiscriminate strip search policy routinely applied to detainees such as Logan cannot be constitutionally justified simply on the basis of administrative ease in attending to security considerations."

*Hill*, 735 F.2d at 394 (*quoting Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir.1981)). In reaching its decision that the search policy was unconstitutional, the court was also careful to emphasize that "almost anything that the examining officer could have found through this [strip search] procedure would already have been discovered during the pat down search that had been conducted on Hill's arrival at the jail." *Id.* at 394.

Nearly a decade later, in *Chapman v. Nichols*, 989 F.2d 393 (10th Cir.1993), the Tenth Circuit again had the opportunity to consider the constitutionality of a search policy that failed to incorporate reasonable suspicion standards. The result of this renewed inquiry was nothing more or less than an emphatic restatement of the principles announced in *Hill.* In *Chapman*, the plaintiffs were all arrested for driving with suspended licenses. Each plaintiff was taken to the jail and strip searched pursuant to a blanket strip search policy. The defendants in *Chapman* had no reasonable suspicion that the plaintiffs were concealing drugs or contraband or that such contraband could not be discovered through a rub search. The court found the jail policy unconstitutional:

> [I]t is undisputed that plaintiffs were arrested for minor traffic violations and were awaiting bail, that jail officials had no reasonable suspicion that these particular arrestees were likely to be carrying or concealing weapons or drugs, and that plaintiffs were stripped solely because of [a] blanket policy .... Every circuit court, including our own, which has considered the above circumstances under the *Wolfish* balancing test has concluded that a search under these circumstances is unconstitutional.

*Id.* at 395.

Search policies which fail to incorporate the reasonable suspicion standards identified above have fared no better in other jurisdictions. *See Masters v. Crouch*, 872 F.2d 1248, 1253 (6th Cir.1989); *Watt v. City of Richardson Police Dept.*, 849 F.2d 195, 199 (5th Cir.1988); *Weber v. Dell*, 804 F.2d 796, 801 (2nd Cir.1986); *Ward v. San Diego County*, 791 F.2d 1329, 1332 (9th Cir.1986); *Jones v. Edwards*, 770 F.2d 739, 742 (8th Cir.1985); *Stewart v. Lubbock County, Tex.*, 767 F.2d 153, 156–57 (5th Cir.1985); *Giles v. Ackerman*, 746 F.2d 614, 617 (9th Cir.1984); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir.1983).

The result of Davis County's failure to incorporate these constitutional standards in its strip search policy is, unfortunately, quite predictable. Confusion about the relationship between strip searches and the requirement of reasonable suspicion reigned from the lowest levels of the jail administration to the highest. Sheriff Clary, who at the time of plaintiff's arrest was the final policy maker for the county, gave contradictory deposition testimony about the propriety of strip searches. On the one hand, Sheriff Clary stated that if there is probable cause *for an arrest*, then it is also permissible to strip search the arrestee:

> Q. So, you're saying ordinarily if [the arresting officers] have probable cause for narcotics and they're booked for possession of narcotics—
>
> A. Well, if they had enough to substantiate an arrest. They can't just think the person has got it and then bring them in and we'll strip search them. We [Davis County Jail] won't do that.

(Clary Dep. at 18, attached as Exhibit A(8) to Plaintiff's Reply Mem.) But then in the next breath, Sheriff Clary announces a different, discretionary standard for strip searches:

> Q. Suppose the [arresting] officer comes in and says, "I have a hunch, I just really kind of think there's drugs here but I'm not really sure." He doesn't need to say probable cause, but in essence he doesn't have probable cause for drugs. Let's say he's going on

a hunch and he says, "I think there are drugs involved, I'd like you to perform a strip search." What would the jail policy be then?

A. Well, the policy hasn't changed. I mean *they [the jailers] have the right to do it or not to.* If it's a person that is a new person, then I can't say what they would be thinking because I don't know. *They may say yes, I'll do it because it's requested* or they could turn it down.

*Id.* at 22 (emphasis added). Neither of Sheriff Clary's interpretations of the county policy states the clear constitutional standard announced by the Tenth Circuit Court of Appeals.

Defendant Williams believed the policy stated something slightly different than Sheriff Clary did. She testified at her deposition that she would not necessarily comply with an arresting officer's request to strip a detainee, and that the final decision whether to strip was hers. Williams also stated, however, that she believed she had no discretion in the case of a narcotics arrest, where a strip search would be mandatory.

Q: He requested it?

A: He requested it.

Q: But the final decision was yours?

A: That's correct.

. . . .

Q: And at that point [when plaintiff was booked], the charges included driving under the influence of marijuana . . . .

A: Correct.

Q: And at that point, it was standard procedure for the jail, mandatory that a strip search be performed?

A: Yes.

Q: No discretion after that point?

A: No, that's exactly right.

(Williams Dep. at 33, 48, attached as Exh. B to Plaintiff's Mem. in Supp.)

David Boucher, who participated in drafting the Davis County strip search policy, echoed one of Sheriff Clary's two interpretations of the policy:

Q. So, [the arresting officer] would have to have sufficient probable cause to at least make a charge and arrest a person on [narcotics] before he could request a strip search for illegal substances?

A. If I understand your question, yes.

(Boucher Dep. at 13, attached as Exhibit A(2) to Plaintiff's Reply Mem.)

Rita Brusch, a Davis County correctional deputy, believed that the Davis County policy enunciated yet another standard for strip searches where the jailers were compelled to search upon a request from an arresting officer:

Q. Now let's suppose an officer comes in and tells you to strip search somebody. Do you go and check the record and find out if they're arrested for a traffic violation or minor offense?

A. No, we're not.

Q. You don't question the officer at all?

. . . .

A. No, we don't.

(Brusch Dep. at 61–61, attached as Exh. A(4) to Plaintiff's Rep. Mem.) By contrast, Jan Cunningham, a captain of the correctional division, stated that the policy only allowed a jailer to conduct a strip search once the detainee had been booked on an eligible charge:

Q. Suppose the police officer brought someone in and said I'm arresting him on speeding, I think he has slipped something into his pocket and I think it's narcotics. At that point would it be within your jail officer's right under your policy to do a strip search?

A. No.

Q. Why is that?

A. That person has not been charged with any particular crime that would meet the policy criteria [,*i.e.,* a violent offense or a minor or traffic offense related to drugs, weapons, or predatory conduct].

(Cunningham Dep. at 19, attached as Exh. A(9) to Plaintiff's Rep. Mem.)

The lack of consistency among the members of the Davis County personnel raises concerns on two grounds. The first is that it is clear from the deposition testimony before the court that the jail's policy fails to address many circumstances which a jailer might need to confront on a day-to-day basis. On the one hand, strip searches are deemed permissible for any person charged with a violent felony or entering the general jail population. On the other hand, searches are deemed not permissible when the detainee has been arrested for traffic or other minor violations "unrelated to drugs, weapons, or predatory conduct." Clearly, this classification scheme is not exhaustive, leaving jailers with the unenviable task of determining whether unaddressed factual scenarios fall more within the "permissible" category or more within the "impermissible" category. This first concern relates primarily to matters of sound administration, however, and the court will not presume to instruct the policy makers of Davis County on the degree to which it might be desireable to make a more comprehensive policy available to jail personnel.

■ By contrast, the court's second concern rises to a constitutional level and it is therefore the court's duty to declare the minimum constitutional standards by which the County must abide. Throughout the deposition testimony quoted above, not one person believed the policy required, as a prerequisite to a strip search, that a jailer possess reasonable suspicion of concealed contraband that would not be discovered through a rub search. And the reason that none of the jailers ever considers the constitutional touchstone of reasonable suspicion is that the policy clearly does not require it. There is simply no mention of "reasonable suspicion" as a factor to be considered by jailers prior to commencing a strip search of a detainee who is not entering the general jail population.

■ This glaring omission is, in itself, a policy decision made by the county which is sufficient to subject it to liability in this case. In *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court specifically recognized that failure to adopt a proper municipal policy could, in appropriate circumstances, become a basis for liability. For instance, where an existing training program fails to deter repeated constitutional violations by police, a city's failure to revise the training program may exhibit a deliberate indifference to the constitutional rights of its citizens. *Id.* at 390 n. 10 ("It could ... be that the police, in exercising their discretion, so often violate constitutional right that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need"). Moreover, even where there has been no prior warning to policymakers, a first constitutional violation may be a basis for finding deliberate indifference if the necessity of a policy was obvious ahead of time. *Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, ——, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997) (acknowledging "possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for [constitutional] violation, could trigger municipal liability").

In this case, there is a basis for municipal liability under both the prior occurrences theory articulated in *Canton* and the first occurrence theory advanced in *Brown.* The constitutional flaws with the County's strip search policy were known as early as the *Cottrell* decision in 1993. That case put the County on warning that gross constitutional violations were occurring under the strip search policy then in existence. Despite this knowledge, the County refused to change the policy, thereby exhibiting "deliberate indifference" to the likelihood of future violations.

In truth, however, the court believes that the County should have been aware of potential problems with its strip search policy even prior to the *Cottrell* case. Jail officials must

search detainees many times every day. The temptation to strip search each and every such detainee is great because it may provide marginal increases in jail security. Such blanket policies are also attractive to jail administrators because they make it unnecessary to determine the existence of reasonable suspicion on a case-by-case basis. *See, e.g., Logan*, 660 F.2d at 1013 (blanket strip search policy "cannot be constitutionally justified simply on the basis of administrative ease in attending to security considerations"). Davis County should therefore have realized that, if it did not explicitly forbid strip searches of detainees absent reasonable suspicion of drugs or other contraband, that sooner or later the constitutional rights of detainees would be violated. The court therefore holds Davis County liable for its failure to formulate a detainee strip search policy which incorporates the constitutional imperatives identified by each and every Court of Appeals to date.

### Conclusion

For the reasons stated above, plaintiff's motion for partial summary judgment on the issue of liability is GRANTED against both defendant Williams and against Davis County.